**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIO BADESCU SKIN CARE, INC.,

                            Plaintiff,

      v.

SENTINEL INSURANCE COMPANY,
LIMITED,

                           Defendant.

20 Civ. 6699 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

May 14, 2021

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND FACTS ...................................................................................... 2

    The Parties ....................................................................................................... 2

    The COVID-19 Pandemic................................................................................ 3

    Mario Badescu's Insurance Claims ................................................................ 4

DISCUSSION ....................................................................................................... 6

    I.    Governing Standards............................................................................. 6

        A.    Standard for a Motion to Dismiss .............................................. 6

        B.    Insurance Contracts Are Enforced as Written ........................... 7

    II.    Mario Badescu Has Not Alleged Facts Triggering Business Income, Extra Expense or Business Income From Dependent Properties Coverage .................... 7

        A.    Mario Badescu Has Not Alleged that Its Business Interruption Was Caused by Direct Physical Loss or Damage ................................. 8

        B.    Mario Badescu Cannot Rescue Its Claims By Alleging a "Concern Regarding the Presence of the Virus" at Its Salon .................... 12

        C.    Mayor DeBlasio's Reference to Property Damage in a Local Executive Order is Irrelevant ................................................................. 16

        D.    The Alleged Lack of a Virus Exclusion Cannot Create Coverage ........... 18

    III.    Mario Badescu Has Not Alleged Facts to Trigger the Civil Authority Clause .... 20

CONCLUSION..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*10012 Holdings, Inc. v. Hartford Fire Insurance Co.*,
  20 Civ. 4471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020).......................................9, 10

*4431, Inc. v. Cincinnati Insurance Companies*,
  No. 5:20-cv-04396, 2020 WL 7075318 (E.D. Pa., Dec. 3, 2020) ...................................19

*6593 Weighlock Drive, LLC v. Springhill SMC Corp.*,
  No. 4799/2020, 2021 WL 1419049 (N.Y. Sup. Ct. Apr. 13, 2021)..................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................6, 12, 17

*Baker v. Oregon Mutual Insurance Co.*,
  No. 20-cv-05467, 2021 WL 24841 (N.D. Cal. Jan. 4, 2021)..........................................17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................6

*Brink's Ltd. v. South African Airways*,
  93 F.3d 1022 (2d Cir. 1996).....................................................................................7

*Cafe Plaza De Mesilla Inc. v. Continental Casualty Co.*,
  No. 2:20-cv-354, 2021 WL 601880 (D.N.M. Feb. 16, 2021).........................................13

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).....................................................................................6

*Circus Circus LV, LP v. AIG Specialty Insurance Co.*,
  No. 2:20-cv-01240, 2021 WL 769660 (D. Nev. Feb. 26, 2021)......................................16

*Commercial Union Insurance Co. v. Flagship Marine Services, Inc.*,
  190 F.3d 26 (2d Cir. 1999)......................................................................................18

*Cunninghame v. Equitable Life Assurance Society*,
  652 F.2d 306 (2d Cir. 1981).....................................................................................7

*Dae Associates, LLC v. AXA Art Insurance Corp.*,
  158 A.D.3d 493 (1st Dep't 2018) ...............................................................................7

*deMoura v. Continental Casualty Co.*,
  20 Civ. 2912, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) .................................8, 9, 11, 20

*Food for Thought Caterers Corp. v. Sentinel Ins. Co.*,
    20 Civ. 3418, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2020) ....................................... passim

*Geragos & Geragos Engine Company No. 28, LLC v. Hartford Fire Insurance Company*,
    No. 2:20-cv-04647-GW-MAA (C.D. Cal. Dec. 3, 2020) ................................... 27

*Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.*,
    No: 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021)................................... 12

*Hero Enterprises B.V. v. Loretta Howard Gallery Inc.*,
    20 F. Supp. 3d 421 (S.D.N.Y. 2014)................................................................................ 6

*Island Hotel Props. v. Fireman's Fund Insurance Co.*,
    No. 4:20-cv-10056, 2021 WL 117898 (S.D. Fla. Jan. 11, 2021)..................................... 17

*Jeffrey M. Dressel, D.D.S., v. Hartford Insurance Co. of the Midwest, Inc.,*
    No. 20-CV-2777, 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021).......................... 8, 10, 22

*Keyspan Gas East Corp. v Munich Reinsurance America, Inc.*,
    96 N.E.3d 209 (N.Y. 2019)............................................................................................ 7

*Kim-Chee LLC v. Philadelphia Indemnity Insurance Co.*,
    No. 1:20-cv-1136, 2021 WL 1600831 (W.D.N.Y. April 23, 2021) ........................... 8, 14

*Mangia Restaurant Corp. v. Utica First Insurance Co.*,
    No. 713847/ 2020, 2021 WL 1705760 (N.Y. Sup. Ct. Mar. 30, 2021) ........................... 8

*Michael Cetta, Inc. v. Admiral Indemnity Co.*,
    20 Civ. 4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020)........................... 9, 10, 11, 21

*Mohawk Gaming Enterprises, LLC v. Affiliated FM Insurance Co.*,
    8:20-CV-701, 2021 WL 1419782 (N.D.N.Y. April 15, 2021) .......................................... 8

*Morgan Stanley Group Inc. v. New England Insurance Co.*,
    225 F.3d 270 (2d Cir. 2000)............................................................................................ 7

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)................................................................................ 7

*O'Brien Sales & Marketing v. Transportation Insurance Co.*, No. 20-cv-02951-MMC,
    2021 WL 105772 (N.D. Cal. Jan. 12, 2021) ..................................................................... 20

*Pahuta v. Massey-Ferguson, Inc.*,
    170 F.3d 125 (2d Cir. 1999)......................................................................................... 11

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
    No. 20-CV-907-, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) ..................................... 22

*Promotional Headwear International v. The Cincinnati Insurance Co.*,
No. 20-cv-2211, 2020 WL 7078735 (D. Kan. Dec. 3, 2020) .............................. 13, 14, 18

*Raymond Corp. v. National Union Fire Insurance Co.*,
833 N.E.2d 232 (N.Y. 2004).................................................................................. 18

*Roundabout Theatre Co. v Continental Casualty Co.*,
751 N.Y.S.2d 4 (1st Dep't 2002) ........................................................................ 10, 11

*Roy H. Johnson, DDS v. Hartford Financial Services Group, Inc.*,
No. 1:20-cv-02000, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) ........................................ 13

*Rye Ridge Corp. v. The Cincinnati Insurance Co.*,
20 Civ. 7132, 2021 WL 1600475 (S.D.N.Y. April 23, 2021)............................................ 8

*SAS International Ltd. v. General Star Indemnity Co.*,
No. 20-11864, 2021 WL 664043 (D. Mass. Feb. 19, 2021) ............................................. 19

*Schlamm Stone & Dolan, LLP. v Seneca Insurance Co.*,
No. 603009/2002, 6 Misc. 3d 1037(A),
2005 WL 600021 (N.Y. Sup. Ct. Mar. 04, 2005) ............................................................ 15

*Selane Products, Inc. v. Continental Casualty Co.*,
No. 2:20-cv-07834,
2021 WL 609257 (C.D. Cal. Feb. 8, 2021).................................................................... 19

*Sharde Harvey DDS v. Hartford Financial Services Group Inc.*,
No. 20-cv-03350, 2020 WL 1034259 (S.D.N.Y. March 18, 2021) ......................... passim

*Social Life Magazine, Inc. v. Sentinel Insurance Co.*,
No. 20 Civ. 3311, 2020 WL 2904834 (S.D.N.Y. May 14, 2020)...................................... 9

*Soundview Cinemas Inc. v. Great American Insurance Co.*,
Index No. 605985-20, 2021 WL 561854 (N.Y. Sup. Ct. Feb. 10, 2021)........................... 8

*SR International Business Insurance Co., Ltd. v. World Trade Center Properties*,
No. 01 Civ. 9291, 2006 WL 3073220 (S.D.N.Y. Oct. 31, 2006) .............................. 18, 19

*Studio 417, Inc. v. Cincinnati Insurance Co.*,
478 F. Supp. 3d 794 (W.D. Mo. 2020) ........................................................................... 12

*Tappo of Buffalo, LLC v. Eerie Insurance Co.*,
20-CV-754, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020).................................... 9, 10, 13

*Thor Equities, LLC v. Factory Mutual Insurance Company*,
No. 20 CIV. 3380 (AT), 2021 WL 1226983 (S.D.N.Y. Mar. 31, 2021) ........................... 9

*Toppers Salon & Health Spa v. Travelers Property Casualty Co. of America*,
   No. 2:20-cv-03342-JDW, 2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) ........................ 27

*Torgerson Properties, Inc. v. Continental Casualty Co.*,
   No. 20-2184, 2021 WL 615416 (D. Minn. Feb. 17, 2021) ................................................ 16

*Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*,
   No. 20-22832, 2021 WL 768273 (S.D. Fla. Feb. 26, 2021) ............................................ 16

*Ultimate Hearing Solutions II, LLC v. Twin City Fire Insurance Co.*,
   No. 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021).............................................. 21

*Uncork and Create LLC v. Cincinnati Insurance Co.*,
   No. 2:20-cv-00401, 2020 WL 6436948 (S.D. W.Va. Nov. 2, 2020).............................. 14

*United Air Lines, Inc. v. Insurance Co. of State of Pennsylvania*,
   439 F.3d 128 (2d Cir. 2006).......................................................................................... 23

*Unmasked Management, Inc. v. Century-National Insurance Co.*,
   No. 3:20-cv-01129, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021) .................................... 14

*Village of Sylvan Beach v. Travelers Indemnity Co.*,
   55 F.3d 114 (2d Cir. 1995).............................................................................................. 7

*Visconti Bus Services, LLC v. Utica National Insurance Group*,
   No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021) .................. passim

*Whiskey Flats, Inc. v. Axis Insurance Co.*,
   No. 20-3451, 2021 WL 534471 (E.D. Pa. Feb. 12, 2021) .............................................. 16

## RULES

Fed. R. Civ. P. 12 ............................................................................................................... 6

Fed. R. Civ. P. 8 ................................................................................................................. 6

## REGULATIONS

Executive Order, 9 NYCRR 8.202 (Mar. 7, 2020) ............................................................. 3

Executive Order, 9 NYCRR 8.202.1 (Mar. 12, 2020) ...................................................... 3

Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) ...................................................... 3

Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) ................................................ 3, 14, 21

## INTRODUCTION

This insurance coverage case involves business interruption claims arising from the COVID-19 pandemic. By this motion, defendant Sentinel Insurance Company Ltd. ("Sentinel") seeks to dismiss the complaint with prejudice because it does not allege property loss or damage covered by the underlying policy.

The plaintiff Mario Badescu Skin Care, Inc ("Mario Badescu") operates a spa and salon in Manhattan. It purchased property insurance (the "Policy") from Sentinel.  The primary insurance coverages at issue (Business Income, Extra Expense, and Business Income from Dependent Properties) are triggered only where there is "direct physical loss of" or "physical damage to" property at Mario Badescu's premises or at "Dependent Properties" (those on which Mario Badescu depends for its business) that causes a suspension in operations. Mario Badescu closed its salon, yet it concedes that it did so not because of any property damage but, instead, because or governmental regulations aimed at "prevent[ing] the transmission of contagious diseases." These governmental mandates have nothing to do with property damage and everything to do with keeping people safely apart from one another.

While Mario Badescu speculates that coronavirus particles were physically present at its premises, that supposition is irrelevant, because there is no factual allegation as to how the virus can cause "physical" damage to property. And, in all events, the speculative presence of the virus was not the *cause* of the losses at issue. Mario Badescu concedes that its salon remained closed because of governmental orders that applied to salons and other businesses statewide, irrespective of whether or to what extent the virus was present at any particular location.

Mario Badescu also invokes one additional type of coverage, under the Policy's "Civil Authority" provision, that is triggered when "access to" the insured premises is "specifically prohibited by order of a civil authority as the direct result" of "direct physical loss or direct

physical damage" in "the immediate area." Nothing like that scenario is alleged to have happened. The governmental orders restricted the *operations* of salons like Mario Badescu, but did not prohibit *access* to the premises. In any event, the orders were not issued (as required for coverage) because of property damage in the "immediate area" of Mario Badescu's premises, but were instead issued to keep people apart to slow the spread of the virus. No damaged property is identified in the Amended Complaint.

As the Court may be aware, Mario Badescu is not the first plaintiff to advance insurance coverage claims from the COVID-19 pandemic. Fifteen courts in New York (including five in this District) have rejected substantially identical claims from plaintiffs that, like Mario Badescu, had their business disrupted by the pandemic and associated government orders. The New York decisions are part of an overwhelming national trend whereby over 160 courts have agreed that losses from the COVID-19 pandemic, and from associated governmental orders, do not constitute a "direct physical loss." There is no reason for a different outcome here.

Simply put, there is no coverage for Mario Badescu's claims. While the COVID-19 pandemic has impacted businesses in unprecedented ways, it cannot vitiate the terms of Sentinel's insurance contract to create coverage where none exists. For all of these reasons and others appearing in the record, Sentinel respectfully requests that the Court dismiss Mario Badescu's claims with prejudice.

## BACKGROUND FACTS

### **The Parties**

Mario Badescu is a salon in Manhattan that purchased property insurance from Sentinel. (ECF No. 28, Amended Complaint ("Am. Compl.") ¶¶ 1-2; *id.* at Ex. 1 ("Policy"), at MBSC_SENT0000063.)

**The COVID-19 Pandemic**

Starting in March 2020, Governor Cuomo issued a series of executive orders aimed at addressing the COVID-19 pandemic. The first was issued on March 7, 2020, when Governor Cuomo declared "a State disaster emergency for the entire State of New York." Executive Order, 9 NYCRR 8.202 (Mar. 7, 2020).

On March 12, 2020, Governor Cuomo directed that "[a]ny place of business or public accommodation . . . operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity, for thirty days," in order to reduce "community contact transmission of COVID-19." Executive Order, 9 NYCRR 8.202.1 (Mar. 12, 2020).

On March 19, 2020, Governor Cuomo issued an order specific to salons, ordering that effective March 21, 2021, "all barbershops, hair salons, tattoo or piercing parlors and related personal service will be closed to members of the public." Executive Order, 9 NYCRR 8.202.7 (Mar. 19, 2020) (cited Am. Compl. ¶ 34.). Governor Cuomo singled out these businesses because "these services cannot be provided while maintaining social distance." *Id*.

On March 20, 2020, Governor Cuomo went further, directing all non-essential businesses "to reduce the in-person workforce at any work locations by 100%." Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (cited Am. Compl. ¶ 36.).

The workforce reduction mandate did not mean that access to business locations was prohibited. Employees could visit their work premises "temporarily" for routine functions, such as retrieving mail, "so long as they w[ould] not be in contact with other people." (Ex. A, at 3 (Question 13) (guidance from Empire State Development Corporation).)[1] *See also* Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) (authorizing guidance).

---

[1] Citations in the form "Ex. __" refer to the exhibits to the accompanying declaration of Charles Michael.

**<u>Mario Badescu's Insurance Claims</u>**

Mario Badescu alleges that, after closing as a "precautionary measure[] to prevent the transmission of contagious diseases," (Am. Compl. ¶ 29), the "Executive Orders prohibited Mario Badescu from resuming normal business operations." (*Id.* ¶ 40.) Mario Badescu then filed an insurance claim on April 14, 2020, which Sentinel denied on April 22, 2020. (*Id.* ¶¶ 58-60.)

On August 20, 2020, Mario Badescu filed its Complaint in this Court.  (ECF No. 1.)  On April 8, 2021, with permission of this Court, Mario Badescu filed its Amended Complaint, invoking four aspects of the Policy's insurance coverage. (Am. Compl. ¶ 44-52.)

First, Mario Badescu seeks Business Income coverage (*id*. ¶¶ 49, 63-68), which covers lost income where "direct physical loss of or physical damage to property" causes a business suspension:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises', including personal property in the open (or in a vehicle) within 1,000 feet of the 'scheduled premises', caused by or resulting from a Covered Cause of Loss.

(Policy at MBSC_SENT0000088 (§ A.5.o).)

Second, Mario Badescu seeks Extra Expense coverage (Am. Compl. ¶¶ 50, 63-68) which covers certain additional expenses incurred under the same circumstances—when there is "direct physical loss of or physical damage to property":

> We will pay reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises'  . . . .

- 4 -

(Policy at MBSC_SENT0000088 (§ A.5.p).)  The term "Extra Expense" refers to expenses incurred to "avoid or minimize the suspension of business and to continue 'operations.'" (*Id.* at MBSC_SENT0000088 (§ A.5.p(3)(a)).)

Third, Mario Badescu seek Business Income from Dependent Properties coverage. (Am. Compl. ¶¶ 52, 63-68.) Business Income from Dependent Properties coverage is triggered, just as with Business Income coverage, when a dependent property suffers a business suspension due to "direct physical loss of or physical damage":

> We will pay the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss.

(Policy at MBSC_SENT0000089 (§ A.5.s.(1)).)

Fourth, Mario Badescu seeks Civil Authority coverage (Am. Compl. ¶¶ 51, 63-68), which covers lost income in the narrow circumstance when a government authority prohibits "access" to the premises because of harm to property "in the immediate area" of the insured premises:

> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

(Policy at MBSC_SENT0000089 (§ A.5.q(1).) The term "Covered Cause of Loss" is defined to mean "risks of direct physical loss" unless excluded or limited. (*Id.* at MBSC_SENT0000080 (§ 3) (capitalization removed).)

The Amended Complaint does not identify any particular property at Mario Badescu's premises, at a dependent property, or in the immediate area, that was lost or damaged as a result of the pandemic or otherwise. Its theory of physical loss is instead that it chose to close on March 16, 2020, as a "precautionary measure[] to prevent the transmission of contagious diseases,"  and

was forced to stay closed because "Executive Orders prohibited Mario Badescu from resuming normal business operations." (*Id.* ¶¶ 29, 40.)

## DISCUSSION

**I.    GOVERNING STANDARDS**

### A.    Standard for a Motion to Dismiss

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

For purposes of a motion to dismiss, the Court may consider not only the complaint itself, but also "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Under this rule, courts commonly consider insurance policies in deciding motions to dismiss cases arising from those policies. *See, e.g., No Hero Enters. B.V. v. Loretta Howard Gallery Inc.*, 20 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2014). Here, Mario Badescu liberally cites the underlying policy (Am. Compl. ¶¶ 45-53); hence it is appropriate for the Court to consider the Policy in ruling on this motion.

### B.      Insurance Contracts Are Enforced as Written

Under New York law, the party seeking insurance coverage "bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).[2] In evaluating whether this burden has been met, courts apply the familiar standards of contracts generally. That is, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).

The enforcement of the plain meaning of contract language is essential to the functioning of the insurance industry. Insurers are in the business of pricing risk, and that would not be possible if courts could arbitrarily bind an insurer to "a risk that it did not contemplate and for which it has not been paid." *Dae Assocs., LLC v. AXA Art Ins. Corp.*, 70 N.Y.S.3d 500, 501 (1st Dep't 2018) (citation omitted). For the same reason, a court should "not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 96 N.E.3d 209, 216 (N.Y. 2019).

## II.   MARIO BADESCU HAS NOT ALLEGED FACTS TRIGGERING BUSINESS INCOME, EXTRA EXPENSE OR BUSINESS INCOME FROM DEPENDENT PROPERTIES COVERAGE

Mario Badescu has not plausibly alleged that its business was suspended because of any "direct physical loss of or direct physical damage to property," as necessary to trigger Business Income, Extra Expense or Business Income from Dependent Properties coverage. While Mario

---

[2] New York law governs. In diversity cases, federal courts in New York apply New York's choice-of-law rules, which "seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996). Where the dispute concerns insurance for "a New York-based entity" and "covers property in New York," that jurisdiction is New York. *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2014); *see also Cunninghame v. Equitable Life Assur. Society*, 652 F.2d 306, 308 n.1 (2d Cir. 1981) (in insurance cases "principal location of the insured risk is given particular emphasis").

Badescu's Amended Complaint advances various arguments to try to characterize matters otherwise, each is meritless, as detailed below.

**A.      Mario Badescu Has Not Alleged that Its Business
          Interruption Was Caused by Direct Physical Loss or Damage**

To trigger Business Income, Extra Expense or Business Income from Dependent Property coverage, Mario Badescu's suspension of operations must have been caused by "direct physical loss of or direct physical damage to property" at its premises (or at a dependent property). (Policy at MBSC_SENT0000088 (§§ A.5.o, A.5.p, A.5.r.).) But allegations of losses based on the COVID-19 pandemic generally, and associated governmental responses, do not fall within that language. All fifteen New York courts to have faced this issue have agreed. *See Rye Ridge Corp. v. The Cincinnati Ins. Co.*, 20 Civ. 7132, 2021 WL 1600475 (S.D.N.Y. April 23, 2021); *Kim-Chee LLC v. Phil. Indem. Ins. Co.*, No. 1:20-cv-1136, 2021 WL 1600831 (W.D.N.Y. April 23, 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, 8:20-CV-701, 2021 WL 1419782 (N.D.N.Y. April 15, 2021); *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, No. 4799/2020, 2021 WL 1419049 (N.Y. Sup. Ct. Apr. 13, 2021); *Mangia Restaurant Corp. v. Utica First Ins. Co.*, No. 713847/ 2020, 2021 WL 1705760 (N.Y. Sup. Ct. Mar. 30, 2021);  *Jeffrey M. Dressel, D.D.S., v. Hartford Ins. Co. of the Midwest, Inc.,* No. 20-CV-2777, 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey DDS v. Hartford Fin. Servs. Grp. Inc.*, No. 20-cv-03350, 2020 WL 1034259 (S.D.N.Y. March 18, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, 20 Civ. 3418, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2020); *deMoura v. Cont'l Cas. Co.*, 20 Civ. 2912, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021); *Visconti Bus Serv, LLC v. Utica Natl. Ins. Group*, No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021); *Soundview Cinemas Inc. v. Great Am. Ins. Co.*, Index No. 605985-20, 2021 WL 561854 (N.Y. Sup. Ct. Feb. 10, 2021); *Tappo of Buffalo, LLC v. Eerie Ins. Co.*, 20-CV-754, 2020 WL 7867553

(W.D.N.Y. Dec. 29, 2020); *10012 Holdings, Inc. v. Hartford Fire Ins. Co*., 20 Civ. 4471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co*., 20 Civ. 4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020); *Social Life Magazine, Inc. v. Sentinel Ins. Co*., No. 20 Civ. 3311, 2020 WL 2904834 (S.D.N.Y. May 14, 2020).[3] At least three key, instructive points underlie the reasoning of these cases and support dismissal here.

First, the policy language requires that there be specific, identifiable property that has suffered tangible change. As Judge Cronan explained in *Michael Cetta*, because the term "physical" means "pertaining to real, tangible objects," the "phrase 'direct physical loss of or damage to'" property must be limited to circumstances where there is "a negative alteration in the tangible condition of property." 2020 WL 7321405, at *6 (citation omitted). The plaintiff in *Michael Cetta* did "not allege that any of [its] property was physically lost or damaged," and, accordingly, the complaint was dismissed. *Id*. at *5. Judge Schofield dismissed the *10012 Holdings* case on similar grounds: "Nothing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff." 2020 WL 7360252, at *2; *see also deMoura*, 2021 WL 2021 WL 848840, at *6 (Eastern District Judge Garaufis concluding that "it is clear that 'direct physical loss or damage to property' requires actual, tangible harm to the property" and dismissing COVID-19 insurance coverage claim because "Plaintiff has failed to allege that such harm occurred."); *Dressel*, 2021

[3] Mario Badescu cites *Thor Equities, LLC v. Factory Mutual Insurance Company*, No. 20 CIV. 3380 (AT), 2021 WL 1226983, at *5 (S.D.N.Y. Mar. 31, 2021) in its pre-motion letter as a case "decided against the insurer[] when trying to dismiss pursuant to a claim that no 'physical loss or damage' was suffered." (ECF No. 30, at 2.) That statement is incorrect. *Thor Equities* concerned the interpretation of two exclusions not at issue in this case (a Loss of Market or Loss of Use Exclusion and a Contamination Exclusion). The Court specifically stated that whether a direct physical loss had occurred was "not at issue." *Id*.

WL 1091711, at *3 (Eastern District Judge Matsumoto concluding that "the Policy was clear and unambiguous, and required coverage only in the event of some physical harm to property, which was not present here"). Here, too, no particular item of property on the premises (or elsewhere) is alleged to have suffered any tangible damage, and so the Amended Complaint should be dismissed.

Second, the concept of "direct physical loss" does not encompass government orders or other external factors that restrict the permissible *uses* of property. Judge Cronan offered a helpful illustration of this point: "Say, for example, a teenager broke curfew, and his parents punished him by taking away the keys to his car. The teen undoubtedly lost the ability to use the car. However, we would not say that there had been a 'direct physical loss of or damage to' the car. The teenager was precluded from driving it. But the car's physical condition remained unchanged . . . ." 2020 WL 7321405, at *6; *see also Food for Thought*, 2021 WL 860345, at *3 ("[C]ourts applying New York law have consistently concluded that loss of use of an insured's premises does not trigger Business Income coverage . . . ."); *Tappo*, 2020 WL 7867553, at *4 ("Purely economic loss due to temporary loss of use, without some sort of actual change in or physical damage to the insured property, does not suffice."); *10012 Holdings*, 2020 WL 7360252, at *2 (rejecting "loss of use" theory).

Precedent pre-dating COVID-19 further confirms that any "loss of use" theory should be rejected. In *Roundabout Theatre Co. v Continental Casualty Co.*, 751 N.Y.S.2d 4, 8 (1st Dep't 2002), New York City shut down the entire block where a Broadway theater was located, and the First Department held that the phrase "direct physical loss" in the theater's policy did not encompass the mere "loss of use" of the property, in the absence of actual physical damage to the theater itself. *Id.* at 8. The holding in *Roundabout* is binding in federal court, because there is no

"persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *See Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).  Here, Mario Badescu improperly relies on the very "loss of use" theory that New York law rejects, insofar as Mario Badescu alleges that COVID-19 and the executive Orders "prohibited Mario Badescu from resuming normal business operations." (Am. Compl. ¶ 40.) This theory is squarely foreclosed by *Roundabout*. *See also Sharde Harvey*, 2021 WL 1034259, at *7 (concluding that *Roundabout* foreclosed COVID-19 insurance claims and adding that an "attack on *Roundabout Theater* would be futile in this case that is governed by New York law").

Third, the insurance policy in this case, and the other cited cases, includes additional language confirming the two points above. Specifically, the coverage at issue would apply through a "period of restoration," which is defined as the period ending when the property at issue "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality." (Am. Compl. Ex. 1 at POLICY048 (§§ A.5.o.1, A.5.p.1, A.5.r.(1)(a)), at POLICY061 (§ G.12); (emphasis added).)  This language necessarily means that there is coverage only in circumstances of "material harm that then requires a physical fix" to specific property. *Michael Cetta*, 2020 WL 7321405, at *6; *deMoura*, 2021 WL 848840, at *5 (construing this language to mean that "something must first be physically damaged" for coverage to be triggered); *Visconti*, 2021 WL 609851, at *5 (concluding that the "repair" language would be rendered "meaningless" if the mere loss of use of a premises were sufficient to trigger coverage).

The New York cases described above, and the reasoning behind them, are part of a broader national trend. Attached as Appendix I is a table listing over **one hundred sixty** federal cases rejecting COVID-19 business interruption insurance claims, for reasons substantially

similar to those set forth above.[4] In sum, based on the great weight of authority in New York and elsewhere, and on a sound application of settled principles of New York law, the Court should dismiss Mario Badescu's claims for Business Income, Extra Expense and Business Income from Dependent Properties coverage.

**B.**    **Mario Badescu Cannot Rescue Its Claims By Alleging a**
         **"Concern Regarding the Presence of the Virus" at Its Salon**

Mario Badescu's Amended Complaint alleges that "[a]s a result of a concern regarding the presence of the Virus at the Premises, Mario Badescu suspended operations at the Premises on March 16, 2020." (Am. Compl. ¶ 29.) This allegation cannot save Mario Badescu's claims, for three independent reasons.

First, even under the lenient standard of review for a motion to dismiss, the Court must "draw on its judicial experience and common sense" to determine if the complaint's allegations state a "plausible" claim, based on "reasonable inference[s]" from the facts. *Iqbal*, 556 U.S. at 678-79. Here, Mario Badescu alleges it had a "concern" that the virus was present within its salon, but provides no factual allegation as to the source of that concern (such as any scientific testing). (Am. Compl. ¶ 29.)  The Amended Complaint refers to an employee testing positive one week after the closure, on March 23, 2020 (id. ¶ 27), but does not allege that the employee was sick while on the premises or that anyone knew of any particular infection when Mario Badescu decided to close.  Under these circumstances, blaming the closure on the presence of the

---

[4] While there are a handful of outlier rulings, which Mario Badescu relied on its response to Sentinel's pre-motion letter (ECF 30, at 2), none are from New York courts, and many of the outlier rulings adopt the "loss of use" theory that is contrary to binding New York precedent and to the overwhelming weight of authority nationwide. *See, e.g., Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 801  (W.D. Mo. 2020) (holding that "a physical loss may occur when the property is uninhabitable or unusable for its intended purpose."); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624, at *10 (E.D. Va. Dec. 9, 2020) (concluding that there was coverage because Plaintiff's property "was deemed uninhabitable").

coronavirus is pure speculation, and other courts have refused to credit similar conjecture. *See*, *e.g.*, *Cafe Plaza De Mesilla Inc. v. Continental Cas. Co.*, No. 2:20-cv-354, 2021 WL 601880, at *6 (D.N.M. Feb. 16, 2021) (rejecting "Plaintiff's conclusory argument that the widespread existence of the virus locally necessarily makes it 'reasonable' to infer that the virus was present on the premises"); *Roy H. Johnson, DDS v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02000, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) (rejecting plaintiff's allegation that "COVID-19 must have somehow found its way into the office" as based on "conjecture and speculation"); *Promotional Headwear Int'l v. The Cincinnati Ins. Co.*, No. 20-cv-2211, 2020 WL 7078735, *8 (D. Kan. Dec. 3, 2020) (reasoning that accepting "conclusory assertion" about the presence of the virus "would be to accept the proposition that any business located in a community with COVID-19 infections was likely contaminated with the virus").

Second, as discussed, the policy's references to "physical" loss or damage, and to the "period of restoration," encompass only *tangible* changes in property that would require *repair*— which is not alleged here. The Amended Complaint does not contain a factual allegation as to what property was "damaged" by the virus or how, much less any suggestion that property needed repairing. Mario Badescu alleges that it "clean[ed] surfaces and applicators" in order to "avoid cross-contamination between patrons" (Am. Compl. ¶ 5), but does not allege that any of those surfaces or applicators (or anything else) were physically damaged or needed repair. Under New York law, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Food for Thought*, 2021 WL 860345, at *5; *see also Sharde Harvey*, 2021 WL 1034259, at *9 (same); *Tappo of Buffalo*, 2020 WL 7867553, at *4 (same); *see also Visconti*, 2021 WL 609851, at *10 ("even if Covid-19 were found at Visconti's

premises, it would not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated by routine cleaning and disinfecting.").[5]

Along similar lines, Judge Crawford, sitting in the Western District of New York, explained that, even though "[v]irus particles may have circulated in the air within the insured premises and settled on the exposed surfaces," that does not mean they somehow "damage" property. *Kim-Chee*, 2021 WL 1600831, at *4. After all, the particles "do not alter the characteristics of the covered property in any way except that their presence creates a health risk for humans who enter the premises." *Id*. Thus, even assuming the virus is present at a premises, the "building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection." *Id.*

This is the point that Mario Badescu missed when it argued in its pre-motion letter that the spa's "services prevent social distancing" and thus "cannot be offered with the constant presence of the virus within the Subject Premises." (ECF No. 30, at 2.) The risk from the inability to socially distance is that the virus will spread to customers in Mario Badescu's salon and make people sick, not that the virus will somehow cause damage to property. There is no dispute that social distancing may be challenging in the particular environment of a spa and salon, but, even so, the property at the premises remains "intact and available for use once the human occupants no longer present a health risk to one another." *Id.* at *6.

---

[5] *See also*, *e.g.*, *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co*., No. 3:20-cv-01129, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) (concluding that the presence of the virus "could not have 'damaged' Plaintiffs' property" because "disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces"); *Uncork and Create LLC v. Cincinnati Ins. Co*., No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D. W.Va. Nov. 2, 2020) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Promotional Headwear*, 2020 WL 7078735, at *8 ("[E]ven assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated . . . [by] routine cleaning and disinfecting.").

Third, even if Mario Badescu plausibly alleged the virus was present at its salon, and that the presence somehow caused "physical" loss or damage, that allegation would still not suffice. The *cause* of Mario Badecu's losses for which it seeks coverage was not localized viral presence but something else—namely, the virus outbreak, and efforts to slow its spread. The governmental orders here did not focus on localized property damage but required *all* personal care businesses (and later *all* nonessential businesses) to close, regardless of whether any particular physical location was contaminated. Executive Order, 9 NYCRR 8.202.7 (Mar. 19, 2020); Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020).

The court's decision in *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co*., No. 603009/2002, 6 Misc. 3d 1037(A), 2005 WL 600021 (N.Y. Sup. Ct. Mar. 04, 2005) is instructive to this point. There, a law firm was denied business interruption coverage for the period immediately following the September 11, 2001 terrorist attacks—despite alleging that "dust and other particles" made it "difficult to remain in the offices"—because those dust particles were not the cause of its alleged losses. *Id*. at *1. All of Lower Manhattan was closed because of the attacks, not because of any particular damage at the firm's offices. *Id*. In *Sharde Harvey*, Magistrate Judge Lehrburger found *Schlamm Stone* instructive in the COVID-19 context because, in both contexts, "the direct cause of [the plaintiff's] business interruption was the shutdown order, not property damage." 2021 WL 1034259, at *10.  The same reasoning applies here, as well.

This is yet another rationale adopted by courts across the country in denying similar COVID-19 insurance claims. For example, a federal court in Pennsylvania denied the claims of a restaurant and bar because its "losses were caused by the Shutdown Orders . . . , not some speculative, unprovable physical damage or unknown condition of the property." *Whiskey Flats,*

*Inc. v. Axis Ins. Co*., No. 20-3451, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021). The court

reached that conclusion because, as here, the plaintiff "was required to comply with the

Shutdown Orders regardless of the presence or absence of the coronavirus on its property." *Id.*

Accordingly, moving forward with "*post hoc* discovery" about whether or to what extent the

virus was present would be pointless, as it "would not change the cause of the Plaintiff's income

losses." *Id*.  This analysis provides an independent basis to dismiss here.[6]

### C.    Mayor DeBlasio's Reference to Property Damage in a Local Executive Order is Irrelevant

Mario Badescu refers to a local government order from New York City Mayor DeBlasio

that states vaguely in a recital that the coronavirus "physically is causing property loss and

damage." (Am. Compl. ¶ 42.) This statement is irrelevant because Mario Badescu alleges that it

was the statewide orders from Governor Cuomo—which lack any reference to property

damage—that "prohibited Mario Badescu from resuming normal business operations." (*Id*. ¶ 40.)

Mayor de Blasio's order referring to property damage is not alleged to have had any impact

whatsoever on Mario Badescu.

Furthermore, recitals in a local government order cannot change the reality of what

property damage did or did not occur at Mario Badescu's premises. The mayor of New York

City may have broad powers, but those powers certainly do not include the ability to issue

---

[6] *See also*, *e.g.*, *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, No. 20-22832, 2021 WL 768273, at *5 (S.D. Fla. Feb. 26, 2021) (finding no causation because "[e]ven if a cleaning crew Lysol-ed every inch of the restaurant, it could still not host indoor dining at full capacity"); *Circus Circus LV, LP v. AIG Specialty Ins. Co*., No. 2:20-cv-01240, 2021 WL 769660, at *4 (D. Nev. Feb. 26, 2021) (no coverage where a casino "temporarily shut down not because COVID-19 damaged its or its neighbors' property, but because it was ordered to do so by the governor"); *Torgerson Properties, Inc. v. Cont'l Cas. Co*., No. 20-2184, 2021 WL 615416, at *2 (D. Minn. Feb. 17, 2021) ("[I]t is not the presence of the virus on the premises that closed [the plaintiff's] properties (or caused people to stop visiting those properties), but rather the executive orders meant to slow the virus's spread.").

factual "findings" in a private contract dispute. And the facts here illustrate exactly why it would be unreasonable to do so. New York City has admitted that the language about property damage was inserted into an executive order only after lobbying from "people who had concerns about insurance"—surely a euphemistic reference to the plaintiffs' bar. *See* Leslie Scism, *Companies Hit by Covid-19 Want Insurance Payouts. Insurers Say No.*, The Wall Street Journal (June 30, 2020) (copy attached as Ex. B).

This sort of litigation contrivance should not be rewarded in the court system, and has not been. Judge Koeltl, for example, refused to credit the recital at issue here, explaining as follows: "Mayor de Blasio's statements are too general and unsupported by specific facts to allege plausibly that [the plaintiff's] property was damaged, and speculative allegations without factual support cannot serve as a basis for a claim." *Food for Thought*, 2021 WL 860345 at *5 (citing *Iqbal*, 556 U.S. at 678). And Magistrate Judge Lehrburger refused to consider Mayor de Blasio's statements, absent authority "that the statement of a municipal executive branch officer can alter the meaning of preexisting contract terms." *Sharde Harvey*, 2021 WL 1034259, at *10.

Other courts have likewise rejected any alleged reliance on these sorts of statements to trigger COVID-19 insurance coverage. *See*, *e.g.*, *Baker v. Oregon Mut. Ins. Co.*, No. 20-cv-05467, 2021 WL 24841, at *2 (N.D. Cal. Jan. 4, 2021) (citations to "statements from the mayors of San Francisco and Los Angeles that they issued the closure orders because the virus was 'causing property loss or damage due to' its attachment to surfaces" did not "plausibly plead a 'direct physical loss of or damage to property' covered by the policy"); *Island Hotel Props. v. Fireman's Fund Ins. Co.*, No. 4:20-cv-10056, 2021 WL 117898 (S.D. Fla. Jan. 11, 2021) ("Although Plaintiff also alleges that Emergency Directive 20-03 speculated that the presence of COVID-19 could 'caus[e] property loss and damage,' the Court need not defer to a conclusory

legal conclusion stated by the County and regurgitated here by Plaintiff."); *Promotional Headwear*, 2020 WL 7078735, at \*7 n.66 ("Plaintiff's reliance on language in the Stay at Home Order recognizing that COVID-19 poses a threat to property is unavailing. The Court determines the meaning of the Policy based on the plain meaning of the language therein."). This Court should follow these authorities, and decline Mario Badescu's invitation to allow a statement from a local politician to govern the facts and law in this case.

### D.   The Alleged Lack of a Virus Exclusion Cannot Create Coverage

Mario Badescu argues that losses resulting from the COVID-19 pandemic must be covered because its Policy does not include a specific virus exclusion. (Am. Compl. ¶ 54-55.) But that fact is irrelevant. It is well-settled that the "absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage . . . ." *Comm'l Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 33 (2d Cir. 1999) (citation omitted). Or, as the New York Court of Appeals has held, exclusions only "*subtract* from coverage" and "cannot create coverage" by "negative inferences." *Raymond Corp. v. Nat'l Union Fire Ins. Co.*, 833 N.E.2d 232, 235 (N.Y. 2004) (emphasis in original; citation omitted).

For example, in *SR International Business Insurance Co., Ltd. v. World Trade Center Properties* LLC, No. 01 Civ. 9291, 2006 WL 3073220, at \*10 (S.D.N.Y. Oct. 31, 2006), the owners of the World Trade Center sought insurance coverage for not only the costs of rebuilding the buildings as they were before the events of September 11, 2001, but also the additional cost to make them "safe, modern, and politically palatable." *Id*. at \*1.

The owners pointed to an exclusion for the "increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property" as evidence that "replacement cost coverage extends well beyond the expenses associated with rebuilding the covered property as it stood before the loss." *Id*. at \*10. In their view, this exclusion would be

"unnecessary unless the excluded event would otherwise fall within the coverage provisions." *Id.* at *10 n.37. The court squarely rejected this argument because New York law does not "define the coverage by the nature of the exclusion," or otherwise allow for the sort of "negative inference" the owners were advancing. *Id.*

Courts across the country have agreed with this reasoning in the specific context of COVID-19, finding that the lack of a virus exclusion cannot create coverage for pandemic-related losses. For example, when the plaintiff in *Sharde Harvey* pointed to a particular virus exclusion that Sentinel allegedly could have included in its policy, Magistrate Judge Lehrburger observed that there was no reason to "look to external documents" when the coverage language was "unambiguous." 2021 WL 1034259, at *12 n.13; *see also, e.g.*, *Kim-Chee*, 2021 WL 1600831, at *8 ("Defendants' decision to forego the virus exclusion does not alter the limits the direct physical loss clause places on the coverage."); *Legal Sea Foods, LLC v. Strathmore Insurance Company*, 2021 WL 858378, at *4 (D. Mass. March 5, 2021) ("Under the express terms of the relevant provision of the Policy, Legal was entitled to coverage only for losses resulting from 'direct physical loss of or damage to' the Designated Properties and the absence of a virus exclusion does not insinuate the expansion of such coverage."); *SAS Int'l Ltd. v. Gen. Star Indem. Co*., No. 20-11864, 2021 WL 664043, at *4 (D. Mass. Feb. 19, 2021) ("[T]he absence of an express virus exclusion does not operate to create coverage for pandemic-related losses.") (internal citations omitted); *Selane Prods., Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-07834-MCS-AFM, 2021 WL 609257, at *4 (C.D. Cal. Feb. 8, 2021) ("That the Policy excludes damages triggered by disease-causing "organisms or microorganisms" does not mean that inanimate viruses are automatically covered by the Policy."); *4431, Inc. v. Cincinnati Ins. Cos.*, No. 5:20-cv-04396, 2020 WL 7075318, at *13 (E.D. Pa., Dec. 3, 2020) ("Plaintiffs have failed to

provide any support for the notion that the absence of an exclusion means that whatever could have been excluded but wasn't is necessarily covered. Even more fundamentally, the issue of exclusions is irrelevant as Plaintiffs' claims do not fall within the scope of the Policies' coverage.")

\* \* \*

In sum, the words of the Policy simply do not provide Business Income, Extra Expense or Business Income from Dependent Properties coverage under the facts alleged, and Mario Badescu's claim for relief under those provisions should be dismissed.

## III.   MARIO BADESCU HAS NOT ALLEGED FACTS TO TRIGGER THE CIVIL AUTHORITY CLAUSE

Under the Civil Authority provision of the Policy, Mario Badescu must allege facts to show that it lost income because:

- "access" to its premises was "specifically prohibited by order of a civil authority";

   **and**

- that the order from a civil authority was "the direct result" of a Covered Cause of Loss (defined as "risks of direct physical loss") to "property in the immediate area" of the insured premises.

(Policy at MBSC_SENT0000089 (§ A.5.q(1)); *id*. at MBSC_SENT0000080 (§ 3) (capitalization removed).) Mario Badescu has not alleged facts that would trigger coverage under these requirements, for three independent reasons.

First, Mario Badescu has not alleged there was any "direct physical loss" for all the reasons discussed above, either at its own premises or in the immediate area. *See Food for Thought*, 2021 WL 860345, at *7 (rejecting Civil Authority coverage where the plaintiff "failed to allege that property in the surrounding area was physically damaged"); *deMoura*, 2021 WL 848840, at *7 (observing that the "Policy's reference to 'direct physical loss of or damage to

property' in the Civil Authority provision is identical to the language used in the Business

Income and Extra Expense provisions" and dismissing Civil Authority claims because the

plaintiff had not "alleged additional facts suggesting that property at locations other than [its own

premises] was subject to such loss or damage"); *Michael Cetta*, 2020 WL 7321405 , at *11

(rejecting civil authority claim because the complaint "fails to allege any specific damage to

property near" the plaintiff's premises); *Visconti*, 2021 WL 609851, at *12 (same).

Second, the Amended Complaint nowhere alleges that access to Mario Badescu's

premises is "specifically prohibited." The governing workforce reduction orders do not say that

business owners or others cannot so much as *access* their premises; the orders instead restrict

what *operations* can occur inside—namely, having employees conduct non-essential work

functions, or, in the case of spas, preventing members of the public from entering the premises.

Executive Order, 9 NYCRR 8.202.7 (Mar. 19, 2020); Executive Order, 9 NYCRR 8.202.8 (Mar.

20, 2020). Judge Koeltl recognized this distinction in rejecting a similar Civil Authority claim:

"Unlike a situation, for example, of an unsafe condition at an adjoining building requiring a

safety evacuation of a covered property, the owner of the property could continue to access the

property despite the total reduction in the workforce." *Food for Thought*, 2021 WL 860345, at

*6.

Courts across the country are in agreement with this point. *See*, *e.g.*, *Michael Cetta*, 2020

WL 7321405 (rejecting civil authority claim under New York law because the plaintiff "has not

alleged that access was ever denied completely to the restaurant"); *Ultimate Hearing Solutions

II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021)

(noting the distinction between "the physical premises where [plaintiff] operate their business"

and "the business itself," and rejecting civil authority coverage because "access to [the

plaintiff's] place of business was not categorically 'prohibited' by government order"); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-, 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020) (explaining that "the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiffs are simply prohibited from operating their business").

Third, even if, for the sake of argument, access were considered "prohibited," that prohibition was not the "direct result" of property damage to "property in the immediate area" of Mario Badescu's premises. There is no allegation here about damaged property anywhere. The executive orders at issue in this case were issued to keep people distanced from one another to slow down "community contact transmission of COVID-19," and do not identify any damaged property that New Yorkers were to avoid. *See e.g.*, Executive Order, 9 NYCRR 8.202.7 (Mar. 19, 2020); Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020). *See also Food for Thought*, 2021 WL 860345, at *6 (no Civil Authority coverage because New York orders were issued "to limit the risk of spreading the Covid-19 virus") (citation omitted); *Sharde Harvey*, 2021 WL 1034259, at *14 ("The Complaint does not name any specific business 'in the immediate area' that reported a case of COVID-19, let alone one that led to the government shutdown orders"); *Dressel*, 2021 WL 1091711, at *5 ("Plaintiff has not alleged that any executive order issued by the Governor of New York was the 'direct result' of a loss to any property in Plaintiff's immediate area."); *Visconti*, 2021 WL 609851, at *12 (rejecting civil authority coverage because alleged damage to neighboring property was "not the cause of any restriction imposed by civil authority," and concluding that the New York orders were issued "to limit the risk of spreading the Covid-19 virus").

The Second Circuit's decision in *United Air Lines, Inc. v. Ins Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006) is instructive on this point. There, United Air Lines sought recovery for losses caused by the temporary shutdown of Reagan Washington National Airport following the September 11, 2001 terrorist attacks. United Air Lines invoked a similar clause, providing coverage where access "is prohibited by order of civil authority as a direct result of damage to adjacent premises." *Id*. at 129. According to United Air Lines, the shutdown was due to damage at the Pentagon nearby. The Second Circuit found there was no coverage because the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," not the fact that the Pentagon was damaged. *Id*. at 134. Just as in *United,* the "order of a civil authority" at issue here has everything to do with protecting human life by controlling when and how people assemble in particular places, and nothing to do with any damaged property.

In sum, Mario Badescu's Amended Complaint has not alleged, and cannot allege, what is necessary to trigger Civil Authority coverage: (1) that access to its property was "specifically prohibited"; and (2) that its business interruption was caused by a civil authority order that was "the direct result" of loss or damage to property in the "immediate area." Its Civil Authority claims should therefore be dismissed.

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should dismiss Mario Badescu's Amended Complaint in its entirety with prejudice.

Dated: May 14, 2021                      Respectfully submitted,

                                         STEPTOE & JOHNSON LLP

                                         By:   /s/ Charles Michael
Sarah D. Gordon*                               Charles Michael
1330 Connecticut Avenue, NW                    Meghan Newcomer
Washington, D.C. 20036                         1114 Avenue of the Americas
(202) 429-3000                                 New York, New York 10036
sgordon@steptoe.com                            (212) 506-3900
*pro hac vice application forthcoming          cmichael@steptoe.com
                                               mnewcomer@steptoe.com

         Counsel for defendant Sentinel Insurance Company, Ltd.

- 24 -

**Appendix I**

Chart of Federal Cases Concluding That Business Interruption
from the COVID-19 Pandemic, and from Associated Governmental Orders,
<u>Does Not Constitute "Direct Physical Loss"</u>

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 1 | 5/11/21, N.D. Tex. | Private Hospital | "Saint Camillus does not allege there was any 'distinct, demonstrable, physical alteration' to its insured property – only that government orders stopped its business operations there for a time. Accordingly, Saint Camillus has not alleged a direct physical loss of or damage to its covered property that triggers coverage under the policy's business interruption provision." *PSG-Mid Cities Med. Ctr., LLC v. Jarrell*, No. 3:20-CV-02477-E, 2021 WL 1894696, at *4 (N.D. Tex. May 11, 2021) |
| 2 | 5/11/21, E.D. Mo. | Restaurant Group | "Plaintiffs maintain that COVID-19 is a physical substance that contaminated Plaintiffs' restaurants 'causing a loss of use of that property [that] constitutes a direct physical loss under the policy.' The Court holds, however, Plaintiffs' interpretation would remove the 'physical' requirement for a covered loss. This Court holds that Plaintiffs' 'loss of use' of the property is insufficient." *Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*, No. 4:20-cv-1249 RLW, 2021 WL 1889866, at *6 (E.D. Mo. May 11, 2021) |
| 3 | 5/6/21, S.D. Iowa | Restaurant Operator | "Plaintiff pleads nothing physical that directly caused Plaintiff's partial loss of use of its property at the restaurant premises when it was forced to cease in-person dining. To the contrary, Plaintiff pleads the Governor's Proclamation closing bars and restaurants for in-person dining did. . . . Plaintiff cannot establish a claim for coverage under the Business Income provision." *Lisette Enterprises, Ltd. v. Regent Ins. Co.*, No. 420CV00299SMRCFB, 2021 WL 1804618, at *5–6 (S.D. Iowa May 6, 2021) |

| 4 | 5/5/21, N.D. Ala. | Hotel & Restaurant Operator | "The entirety of the policy language confirms that direct physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause. . . . Ascent's two alleged reasons for its closures—government closure orders and viral contamination—do not cause actual physical change to property." *Ascent Hospitality Mgmt. Co., LLC v. Emps. Ins. Co. of Wausau*, No. 2:20-cv-770-GMB, 2021 WL 1791490, at *4 (N.D. Ala. May 5, 2021) |
|---|---|---|---|
| 5 | 5/4/21, S.D. Fla. | Restaurant Operator | "The virus does not cause direct loss or damage to a property sufficient to trigger coverage, a reality which appears to be why Plaintiff's counsel was unable to provide any specific facts to support the conclusory allegation of coronavirus physical damage to the restaurant. Plaintiff may have lost business because of the pandemic, but a decline in restaurant revenue or profits is merely an economic loss, not a loss covered by the policy." *Café Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.*, Case No. 20-21641-CIV-GOODMAN, 2021 WL 1803805, at *1 (S.D. Fla. May 4, 2021) |
| 6 | 4/29/21, N.D. Ill. | Restaurant Operator | "[U]nder the plain language of the Policy, the presence of the virus in the air or on surfaces does not constitute physical damage or physical loss. The word physical modifies loss in 'physical loss' and damage in 'physical damage.' The plain meaning of physical is tangible or concrete. Plaintiff has not alleged any concrete or tangible damage to property." *L&J Mattson's Co. v. Cincinnati Ins. Co.*, No. 20 C 7784, 2021 WL 1688153, at *5 (N.D. Ill. Apr. 29, 2021) (internal citations omitted) |
| 7 | 4/28/21, E.D. Pa. | Restaurants | "Plaintiffs have not plausibly alleged either physical loss or physical damage within the meaning of the policies. . . . Plaintiffs admit that there was no physical source or threatened presence of a physical source that caused Plaintiffs' inability to use their properties for their intended purpose. Indeed, the Amended Complaint does not allege any facts regarding the physical integrity or use of the Covered Properties." *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2034, 2021 WL 1667424, at *7 (E.D. Pa. Apr. 28, 2021) |

| 8 | 4/23/21, W.D.N.Y. | Martial Arts Business | "[T]he Complaint alleges that the virus has become widespread and that governmental orders in New York State have led to business closures by sharply reducing occupancy. This claim—which can hardly be contested—falls short of the requirements of a direct physical loss or damage to the premises." *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, No. 1:20-cv-1136, 2021 WL 1600831, at *6 (W.D.N.Y. Apr. 23, 2021) |
|---|---|---|---|
| 9 | 4/23/21, S.D.N.Y. | Restaurant | "The Complaint alleges that COVID-19 caused a 'direct physical loss' of Plaintiffs' business premises, thus triggering the Policies' Business Income coverage. The Complaint fails to state a claim because, despite this conclusory allegation, the Complaint pleads no facts to suggest that there was a 'physical loss or accidental physical damage' to the insured property as the Policies require." *Rye Ridge Corp. v. The Cincinnati Ins. Co.*, 20 Civ. 7132, 2021 WL 1600475, at *2 (S.D.N.Y. April 23, 2021) |
| 10 | 4/23/21, E.D. La | Custom Clothing Stores | "Q Clothier generally alleges that the pandemic and the governor's stay-at-home order caused damage to its property which 'cannot be used for its intended use.' However, Q Clothier's damages merely reflect economic losses stemming from the government's order prohibiting access to its stores. Absent evidence that its property sustained physical and demonstrable alteration, Q Clothier's damages do not meet the Fifth Circuit's definition of covered physical loss or damage." *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, No. CV 20-1470, 2021 WL 1600247, at *7 (E.D. La. Apr. 23, 2021) |
| 11 | 4/20/21, E.D. Tex. | Spice & Tea Room Operator | "[T]he Court finds that 'direct physical loss' requires a distinct, structural alteration to Aggie Investments' commercial property. Aggie Investments does not allege this occurred. . . . Aggie Investments complains that government orders restricted access to its property. But loss of access, or even restricted access, is not the tangible alteration of structures that 'direct physical loss' contemplates." *Aggie Investments, LLC v. Cont'l Cas. Co.*, No. 4:21-CV-0013, 2021 WL 1550479, at *4 (E.D. Tex. Apr. 20, 2021) |

| 12 | 4/16/21, S.D. Fla. | Restaurant Business | "The reason th[e loss of use] argument fails repeatedly is because, regardless of the two definitions, they both require something "direct" and "physical" in their relationship with property. Yet, there is nothing 'direct' or 'physical' with Plaintiff seeking to recover economic losses for periods of reduced operations. While the harm that led to the closure of Plaintiff's business is due to a physical virus, the coronavirus particles damage lungs[;] they do not damage buildings." *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, No. 20-23245-Civ-WILLIAMS, 2021 WL 1540907, at *9 (S.D. Fla. Apr. 16, 2021) |
|---|---|---|---|
| 13 | 4/15/21, N.D. Ala. | Restaurant | "While the Woolworth alleges that it was temporarily unable to function as an entertainment venue because the virus was physically present on its property, the Woolworth has not alleged that any of its property was materially harmed (i.e. 'physical damage') or ruined (i.e. 'physical loss') and thus needed to be repaired, rebuilt, or replaced. Nor can it. A virus does not physically alter the property it rests on. A virus does not require property to be repaired, rebuilt, or replaced. A virus can simply be wiped off the surface with disinfectant, so there is no 'physical damage,' no 'physical loss,' and no 'period of restoration' of property." *Woolworth LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-01084-CLM, 2021 WL 1424356, at *4 (N.D. Ala. Apr. 15, 2021) |
| 14 | 4/14/21, D. Md. | Vehicle Auction Facility | "[T]his Court is unpersuaded that the COVID-19 virus in some way physically altered Bel Air's covered properties or the surrounding areas in a manner that triggers coverage under the plain language of the Policy. A mere loss of use of property is not 'physical damage' within the meaning of Maryland law." *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, No. RDB-20-2892, 2021 WL 1400891, at *12 (D. Md. Apr. 14, 2021) |
| 15 | 4/12/21, W.D. Tex. | Production Design Company | "In order to trigger coverage under a commercial property policy, 'physical loss' requires some 'distinct, demonstrable, physical alteration of the property,' not a merely economic losses." *Ilios Prod. Design, LLC v. Cincinnati Ins. Co.*, No. 1:20-CV-857-LY, 2021 WL 1381148, at *5 (W.D. Tex. Apr. 12, 2021) |

| 16 | 4/9/21, S.D. Fla. | Gym | "[T]he plain meaning of the terms 'direct physical loss of or damage to property' unambiguously requires actual, tangible damage to the physical premises itself, not merely economic losses unaccompanied by a demonstrable physical alteration to the premises itself." *PF Sunset View, LLC v. Atl. Spec. Ins. Co.*, No. 20-81224-CIV-CANNON/Brannon, 2021 WL 1341602, at *2 (S.D. Fla. Apr. 9, 2021) |
| --- | --- | --- | --- |
| 17 | 4/9/21, C.D. Cal. | Restaurant & Nightclub | "Here, the Policy provisions on which Caribe relies clearly condition recovery on physical loss or damage to the insured premises. But Caribe alleges only that COVID-19 restrictions have prevented it from using its property for normal business operations, which does not suffice. Nowhere in the FAC does Caribe sufficiently allege direct physical loss or damage such as would trigger coverage. Therefore, just as in the cases discussed above, Caribe's failure to allege direct physical loss or damage forecloses its claim to coverage under the Policy." *Caribe Rest. & Nightclub, Inc. v. Topa Ins. Co.*, No. 2:20-cv-3570-ODW (MRWx), 2021 WL 1338439, at *3 (C.D. Cal. Apr. 9, 2021) |
| 18 | 4/8/21, E.D. Pa. | Hotel Operator | The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing. The effects of the COVID-19 pandemic on Plaintiffs do not fall within that definition, as the presence or threatened presence of the coronavirus on the property can be largely remediated by mask wearing, social distancing, and disinfecting surfaces." *SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*, No. 20-6228, 2021 WL 1339993, at *5 (E.D. Pa. Apr. 8, 2021) |
| 19 | 4/7/21, D. Mass. | Restaurant Operator | "The COVID-19 virus does not impact the structural integrity of property in a manner contemplated by the Policy and thus cannot constitute 'direct physical loss of or damage to' property. A virus is incapable of damaging physical structures because the virus harms human beings, not property." *Select Hosp., LLC v. Strathmore Ins. Co.*, No. CV 20-11414-NMG, 2021 WL 1293407, at *3 (D. Mass. Apr. 7, 2021) (internal citations omitted) |

| 20 | 4/2/21, S.D. Cal. | Restaurant Operator | "[T]he Court grants Defendant's motion with respect to Plaintiffs' breach of contract claim because Plaintiffs fail to allege the requisite 'distinct, demonstrable, physical alteration' to their property. *Islands Restaurants, LP v. Affiliated FM Ins. Co.,* No. 3:20-cv-02018-H-JLB, 2021 WL 1238872, at *5 (S.D. Cal. Apr. 2, 2021) |
|---|---|---|---|
| 21 | 4/1/21, C.D. Cal. | Retail Operator | "[W]here an insurance policy conditions recovery on 'direct physical loss or damage,' economic business impairments caused by COVID-19 safety orders do not fall within the scope of coverage." *Motiv Grp., Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-9368-ODW (Ex), 2021 WL 1240779, at *4 (C.D. Cal. Apr. 1, 2021) |
| 22 | 3/31/21, E.D. Pa. | Dentist | "As for 'physical loss of or damage to' property, the loss or damage must be physical; pure economic losses are intangible and do not constitute property damage. The use of the word 'physical' unambiguously means there must be tangible destruction of some part of the property." *Eric R. Shantzer, DDS v. Travelers Cas. Ins. Co. of Am.*, No. CV 20-2093, 2021 WL 1209845, at *4 (E.D. Pa. Mar. 31, 2021) |
| 23 | 3/31/21, N.D. Cal | Modeling Service | "Here, Plaintiffs concede there has been no physical damage to or alteration of their property. Thus, since the policies require physical loss or damage, and Plaintiffs' claims do not constitute physical loss or damage as a matter of law, Plaintiffs cannot state a valid claim for relief." *Barbizon Sch. of S.F., Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-08578-TSH, 2021 WL 1222161, at *8 (N.D. Cal. Mar. 31, 2021) |
| 24 | 3/31/21, N.D. Ill. | Hospitality Support Agency | "In sum, the policy's Business Income provision does not apply where, as here, a government closure order prohibits access to a business's premises for reasons unconnected to any change in the physical condition of those premises, or in the physical condition or location of property at those premises." *Chief of Staff LLC v. Hiscox Ins. Co. Inc.,* No. 20 C 3169, 2021 WL 1208969, at *4 (N.D. Ill. Mar. 31, 2021) |

| 25 | 3/31/21, E.D. Pa. | Medical Practice | "There was no physical loss or damage to Glat's or others' properties alleged in the amended complaint. Thus, because it has not alleged facts showing 'a direct physical loss of or damage to' its own or others' properties, Glat has not established coverage under the civil authority, business income or extra expenses provisions." *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, No. CV 20-5271, 2021 WL 1210000, at *6 (E.D. Pa. Mar. 31, 2021) |
|----|------|------|------|
| 26 | 3/30/21, E.D. Pa. | Wine Bar & Tap Room Operator | "While there is no dispute that Plaintiffs here have been precluded from fully using the insured premises by the government closure orders, the Complaint does not allege that any physical force has rendered the premises unusable or otherwise affected the condition of the property. Thus, Plaintiffs' Complaint fails to allege a 'direct physical loss of' the insured property, and fails to trigger coverage under the Policies' Business Income and Extra Expense provisions." *Tria WS LLC v. Am. Auto. Ins. Co.*, No. 20-4159, 2021 WL 1193370, at *4 (E.D. Pa. Mar. 30, 2021) |
| 27 | 3/30/21, S.D. Fla. | Eyewear Retailer | "Read in context, the textual combination of the Policy's affirmative grant of coverage—'direct physical loss to Covered Property'— unambiguously requires actual tangible damage to the physical premises itself, not merely a claim that the property as a business has suffered adverse economic consequences or impact related to use of the property." *Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.,* No. 20-80749-CIV, 2021 WL 1220750, at *5 (S.D. Fla. Mar. 30, 2021) |
| 28 | 3/30/21, E.D. Pa. | Sports Arena | "The explicit terms of the relevant policies require a 'direct physical loss' by virtue of the definitions for 'Covered Cause of Loss' and 'Loss.' Government orders in response to a virus simply do not fit this physicality requirement." *Chester Cnty. Sports Arena, et al. v. Cincinnati Spec. Underwriters Ins. Co.*, No. 20-2021, 2021 WL 1200444, at *7 (E.D. Pa. Mar. 30, 2021) |

| 29 | 3/29/21, E.D. Pa | Restaurant and Bar | "The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing. The effects of the COVID-19 pandemic on Plaintiff do not fall within that definition, as the presence or threatened presence of the coronavirus on the property can be largely remediated by mask wearing, social distancing, and disinfecting surfaces." *J.B. 's Variety Inc. v. Axis Ins. Co*, No. CV 20-4571, 2021 WL 1174917, at *4 (E.D. Pa. Mar. 29, 2021) |
|---|---|---|---|
| 30 | 3/26/21, C.D. Cal. | Event Planner | "Here, the Policy clearly conditions recovery on physical loss of or damage to the insured premises. Sky Flowers alleges only loss of use of the property due to the government's response to COVID-19, which does not amount to direct physical damage." *Sky Flowers, Inc. v. Hiscox Ins. Co., Inc.*, No. 2:20-cv-05411-ODW (MAAx), 2021 WL 1164473, at *3 (C.D. Cal. Mar. 26, 2021) |
| 31 | 3/26/21, E.D. Wis. | Childcare Center Operator | "[Plaintiffs] must allege that COVID-19 caused a direct material, tangible, corporeal, or perceptible, loss of or damage to their covered premises. The Court finds that Plaintiffs have not sufficiently pleaded relevant facts supporting such allegations." *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, No. 20-CV-720-JPS, 2021 WL 1169565, at *7 (E.D. Wis. Mar. 26, 2021) |
| 32 | 3/25/21, N.D. Cal. | Restaurant Owner | "[T]he plaintiffs do not plausibly plead a claim for coverage of their business losses and expenses because no physical loss of or damage to the restaurant caused the suspension of their business. Instead, the losses resulted from the closure orders." *Baker v. Oregon Mut. Ins. Co.*, No. 20-CV-05467-LB, 2021 WL 1145882, at *5 (N.D. Cal. Mar. 25, 2021) |

| 33 | 3/24/21, D. Mass. | Restaurant Operator | "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property. . . . Having found that the phrase 'direct physical loss' does not encompass a viral infestation, plaintiffs cannot establish coverage under any part of the Policy" *Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*, No. CV 20-11497-RGS, 2021 WL 1131640, at *3 (D. Mass. Mar. 24, 2021) (internal citations omitted) |
|----|----|----|----|
| 34 | 3/23/21, S.D. Ill. | Restaurant Operator | "The Covid-19 virus does not cause 'direct physical loss or damage to' covered property under a business income loss policy." *Zajas, Inc. v. Badger Mut. Ins. Co.*, No. 20-CV-1055-DWD, 2021 WL 1102403, at *3 (S.D. Ill. Mar. 23, 2021) |
| 35 | 3/23/21, N.D. Ohio | Bridal Shop | "Construing the allegations in the Amended Complaint in Bridal Expressions's favor, the court finds that Bridal Expressions fails to allege plausible facts to support its claim that the presence of COVID-19 and the loss of the intended use of the property constitute a 'direct physical loss of or damage to property.'" *Bridal Expressions LLC v. Owners Ins. Co.*, No. 1:20 CV 833, 2021 WL 1232399, at *6 (N.D. Ohio Mar. 23, 2021) |
| 36 | 3/22/21, E.D.N.Y. | Dentist | "[T]he court finds that Plaintiff cannot plausibly state a claim for relief based on its loss of business income as a result of the COVID-19 pandemic. Though the pandemic has been a devastating event for Plaintiff's business and many other businesses, the business interruption was not caused by a physical loss of or physical damage to property." *Jeffrey M. Dressel, D.D.S., v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777, 2021 WL 1091711, at *5 (E.D.N.Y. Mar. 22, 2021) |

| 37 | 3/22/21, M.D. Fla. | Restaurant Operator | "Pane Rustica has alleged only economic damage, not physical damage; consequently, its claim is not covered." *Pane Rustica, Inc. v. Greenwich Ins. Co.*, No. 8:20-cv-1783-KKM-AAS, 2021 WL 1087219, at *3 (M.D. Fla. Mar. 22, 2021) |
|---|---|---|---|
| 38 | 3/19/21, W.D. Mich. | Winery | "St. Julian has not alleged a tangible, physical loss or damage. The coronavirus has not physically altered any property, and St. Julian does not plausibly allege that its property became unusable. Thus, St. Julian did not suffer a 'loss' as defined by the Policy." *St. Julian Wine Co., Inc. v. Cincinnati Ins. Co.*, No. 1:20-cv-374, 2021 WL 1049875, at *3 (W.D. Mich. Mar. 19, 2021) |
| 39 | 3/19/21, C.D. Cal. | Otolaryngology Practice | "WHN has failed to allege any direct physical loss. Rather, Plaintiff alleges that orders issued by state and local governments in March 2020 mandated that Plaintiff limited some of its operations to 'emergency procedures' and suspended other practices. Plaintiff's allegations are insufficient to state a claim for coverage under the Policy. Temporary inability to use commercial premises is not direct physical loss of property." *Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.*, No. 220CV06132JFWJCX, 2021 WL 1060230, at *5 (C.D. Cal. Mar. 19, 2021) |
| 40 | 3/19/21, N.D. Cal. | Restaurant Management Company | "Since the Policy requires physical loss or damage, and Plaintiffs' claims do not constitute physical loss or damage as a matter of law, Plaintiffs cannot state a valid claim for relief." *Out West Rest. Grp. v. Affiliated FM Ins. Co.*, No. 20-cv-06786-TSH, 2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021) |
| 41 | 3/18/21, W.D. Ky. | Dentist | "'[P]hysical loss' would apply to property destroyed by some force, contrasted with 'physical damage' which would cover a lesser extent of harm short of destruction or ruin. Thus, the policy would extend to the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property. . . . Accordingly, the Court will dismiss BOHC's claims." *Bluegrass Oral Health Ctr., PLLC v. Cincinnati Ins. Co.*, No. 1:20-CV-00120-GNS, 2021 WL 1069038, at *5 (W.D. Ky. Mar. 18, 2021) |

| 42 | 3/18/21, S.D.N.Y. | Dentist | "Under New York law, it is unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and (2) insurance provisions that cover business interruption 'caused by direct physical loss of or physical damage to property' provide coverage only where the insured's property suffers direct physical damage. The COVID-19 pandemic and shutdown orders may have created a 'loss of use' of property, but – as explained in greater detail below – they did not cause 'physical damage to property,' requiring dismissal here." *Sharde Harvey DDS v. Hartford Fin. Servs. Grp. Inc.*, No. 20-cv-03350, 2020 WL 1034259, at *6 (S.D.N.Y. March 18, 2021) |
|----|-------------------|---------|------|
| 43 | 3/18/21, W.D. Pa. | Hospital | "Here, Windber lost the use of its property because of the Orders enacted by Governor Wolf. Further, there is no allegation that Windber's property was uninhabitable. . . . [B]ecause the claimed loss is not related to the physical condition of the property, the Court finds that Windber is not entitled to coverage under the Business Income or Extra Expense provisions of the Policy." *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, No. 3:20-cv-80, 2021 WL 1061849, at *5 (W.D. Pa. Mar. 18, 2021) |
| 44 | 3/17/21 | Footwear Business | "The presence of COVID-19 on surfaces does not 'physically alter' the property, as understood in the ordinary sense. Without evidence of a 'distinct, demonstrable, physical alteration,' Plaintiff does not have a valid claim." *Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20-CV-1195 TWR (WVG), 2021 WL 1112710, at *3 (S.D. Cal. Mar. 17, 2021) |
| 45 | 3/16/21, D. Minn. | Florist | "Because Bachman's has failed to allege any structural damage to the property, or that the property has been contaminated or otherwise injured, the Court finds that the Policy does not provide coverage for the business interruption losses claimed by Bachman's when the State of Minnesota issued closure orders because of COVID-19." *Bachman's Inc. v. Florists' Mut. Ins. Co.*, No. 20-2399 (MJD/DTS), 2021 WL 981246, at *5 (D. Minn. Mar. 16, 2021) |

| 46 | 3/15/21, E.D. Tex. | Restaurants | "Because COVID-19 never actually caused physical damage or loss to any of Selery's property, the claim does not come within the Business Income provision's coverage. Government measures, not any tangible damage, caused a suspension of Selery's business operations. So, the provision is inapplicable." *Selery Fulfillment, Inc. v. Colony Ins. Co.*, No. 4:20-cv-853, 2021 WL 963742, at *7 (E.D. Tex. Mar. 15, 2021) |
|----|--------------------|-------------|---------------------------------------------------------------------------------------------------------------------------|
| 47 | 3/12/21, S.D. Tex. | Retail Jeweler | "Zadok does not allege that COVID-19 changed the property so as to make it unusable or uninhabitable. At most, Zadok alleges that COVID-19 caused a change in the way it operated its store, first by temporarily closing it, then by restricting the number of customers physically present in the store at any one time. None of these is sufficient to plausibly allege direct physical loss of or damage to property." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, No. CV H-20-3606, 2021 WL 1232778, at *5 (S.D. Tex. Mar. 12, 2021) |
| 48 | 3/11/21, D.N.J. | Medical Facility | "Plaintiff has not alleged any facts that support a showing that its properties were physically damaged. Instead, Plaintiff pleads that the Orders limited access to its facility and restricted Plaintiff's ability to provide medical care which caused Plaintiff to lose income and incur expenses. This is not enough." *Arash Emami, M.D., P.C., Inc. v. CNA & Transportation Ins. Co.*, No. CV2018792SDWLDW, 2021 WL 1137997, at *2 (D.N.J. Mar. 11, 2021) |
| 49 | 3/10/21, E.D. Va. | Restaurant Operator | "Skillets fails to plead that either COVID-19 or the closure orders constitutes a direct physical loss because neither physically altered Skillets's restaurants." *Skillets, LLC v. Colony Ins. Co., No. 3:20CV678-HEH*, 2021 WL 926211, at *5 (E.D. Va. Mar. 10, 2021) |

| 50 | 3/9/21, D. Mass. | Restaurant Operators | "[T]he presence or threat of coronavirus does not constitute a 'direct physical loss of or damage to property,' even when it or subsequent government orders render that property unusable for its intended purpose. Plaintiffs therefore cannot maintain a claim for coverage under the Business Income and Extra Expense provisions." *Kamakura, LLC v. Greater New York Mut. Ins. Co.*, No. CV 20-11350-FDS, 2021 WL 1171630, at *8 (D. Mass. Mar. 9, 2021) |
|---|---|---|---|
| 51 | 3/8/21, D. Ariz. | Restaurants | "The mere fact that Plaintiffs needed to clean surfaces that could host the virus does not constitute actual physical damage entitling them to coverage under the policy. Plaintiffs could easily remedy the problem by diligently cleaning, and clearly no repairs were necessary." *B Street Grill & Bar LLC v. Cincinnati Ins. Co.*, No. CV-20-01326, 2021 WL 857361, at *5 (D. Ariz. Mar. 8, 2021) |
| 52 | 3/8/21, S.D. Ohio | Preschools | "[T]he Policies require more than a simple 'loss of use' of the property. For coverage under the Policies, there must be a material or perceptible destruction, harm, or ruin to covered property." *Dakota Girls, LLC v. Phil. Indem. Ins. Co.*, No. 2:20-cv-2035, 2021 WL 858489, at *6 (S.D. Ohio, Mar. 8, 2021) |
| 53 | 3/6/21, S.D.N.Y. | Catering Business | "[B]ecause Food for Thought alleges that it sustained Business Income losses when it lost the physical use of its property as a result of government-mandated closure orders, Food for Thought has failed to plead facts sufficient to establish that it suffered a direct physical loss of or physical damage to its property, within the meaning of its policy with Sentinel." *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, 20 Civ. 3418, 2021 WL 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2020) |

| 54 | 3/5/21, D. Mass | Restaurant | "The COVID-19 virus does not impact the structural integrity of property in the manner contemplated by the Policy and thus cannot constitute 'direct physical loss of or damage to' property. A virus is incapable of damaging physical structures because 'the virus harms human beings, not property.'" *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 20-10850, 2021 WL 858378, at *3 (D. Mass. Mar. 5, 2021) |
|----|----|----|----|
| 55 | 3/5/21, E.D.N.Y. | Medical Practice | "As contextually relevant, 'direct' means '[f]ree from extraneous influence; immediate,' and 'physical' means '[o]f, re-lating to, or involving material things; pertaining to real, tangible objects.' *Direct*; *Physical*, Black's Law Dictionary (11th ed. 2019). Taken together, the plain meaning of 'direct physical loss or dam-age' includes loss or damage that is 'immediate,' 'real,' and 'tangible.'" *deMoura v. Cont'l Cas. Co.*, 20 Civ. 2912, 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) |
| 56 | 3/4/21, S.D. Fla. | Restaurants | "The Court finds the Restaurants' interpretation to stretch the plain meaning of the policy's words beyond what they can bear. Simply put, and as other Courts in this district have noted when considering similar lawsuits, the Restaurants simply do not provide the Court with adequate reason to depart from the nearly unanimous view that neither the government's orders nor COVID-19 caused direct physical loss of or damage to the Restaurants' property sufficient to trigger coverage." *AE Mgmt., LLC v. Illinois Union Ins. Co.*, No. 20-22925-Civ, 2021 WL 827192, at *3 (S.D. Fla. Mar. 4, 2021) |
| 57 | 3/4/21, E.D.N.C. | Hotel and Restaurant Management Business | "Coverage under this policy is expressly triggered by physical loss or damage to property, and further the coverage period is expressly defined as the time it takes to rebuild, repair, or replace the damaged property. To adopt plaintiff's reading, which would allow for intangible damage to trigger coverage, would render other sections of the provision ineffective, which is something the Court cannot do." *Summit Hospitality Grp., Ltd. v. Cincinnati Ins. Co.*, No. 5:20-CV-254, 2021 WL 831013, at *4 (E.D.N.C. Mar. 4, 2021) |

| 58 | 3/1/21, N.D. Ga. | Dentist | "In this case, although the phrase "direct physical loss" is not defined in the Policy, the Court finds that its plain and literal meaning (based on certain related definitions in the Policy and applicable case law) requires actual, physical damage to the covered premises. . . . [T]he Court finds that the Complaint fails to show the direct physical loss or damage necessary for coverage under the Policy." *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 1:20-cv-02248-JPB, 2021 WL 778728 (N.D. Ga. Mar. 1, 2021) |
|---|---|---|---|
| 59 | 3/1/21, M.D. Fla. | Beer Distributor | "While the Policy does not explicitly exclude coverage for losses caused by a pandemic, Plaintiff fails to elucidate how the virus itself 'directly' caused the loss of the beer. Clearly, the market and the government's responses to the pandemic were the direct causes of Plaintiff's loss—but the Policy does not cover such causes." *Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.*, No. 6:20-CV-1026-PGB-DCI, 2021 WL 1232400, at *4 (M.D. Fla. Mar. 1, 2021) |
| 60 | 2/26/21, S.D. Fla. | Restaurant | "[T]he key difference between the Plaintiff's loss of use theory and something clearly covered—like a hurricane—is that the property did not change. The world around it did. And for the property to be useable again, no repair or change can be made to the property—the world must change. Even if a cleaning crew Lysol-ed every inch of the restaurant, it could still not host indoor dining at full capacity. Put simply, Plaintiff seeks to recover from economic losses caused by something physical—not physical losses." *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, No. 20-22832, 2021 WL 768273, *5 (S.D. Fla. Feb. 26, 2021) |

| 61 | 2/26/21, N.D. Ohio | Real Estate Company | "[The plaintiff's] interpretation that 'direct physical loss' includes economic losses . . . stretches the Policy language beyond its plain meaning and requires the Court to read the word 'physical' out of the Policy language. The Court may not do so. Additionally, the Policy does not protect against the 'physical loss of use or damage to property,' and the Court also may **not** read words into the Policy language." *Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-CV-1204, 2021 WL 766802, *9 (N.D. Ohio Feb. 26, 2021) (emphasis in original) |
| --- | --- | --- | --- |
| 62 | 2/26/21, D. Nev. | Casino | "Circus Circus makes it clear that it temporarily shut down not because COVID-19 damaged its or its neighbors' property, but because it was ordered to do so by the governor. The casino also fails to allege any actual, physical change to its property requiring remediation. The paucity of these allegations is hardly sufficient to show the type of distinct, demonstrable, physical alteration or change in the condition of the property needed to show 'direct physical loss or damage.'" *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, No. 2:20-cv-01240-JAD-NJK, 2021 WL 769660, *4 (D. Nev. Feb. 26, 2021) |
| 63 | 2/25/21, N.D. Cal | | "Another Planet's facilities did not shut down because of the virus's presence on facility surfaces. Rather, those facilities shut in response to the closure orders, which would have required them to remain closed even if Another Planet could have proven to a certainty that the virus was not present at its facilities. This is obvious both from the allegations in the complaint and the closure orders that the complaint incorporates (and that are subject to judicial notice). Therefore, the company's losses were not caused by 'direct physical loss or damage' to its facilities." *Another Planet Entertainment, LLC v. Vigilant Ins. Co.*, No. 20-cv-07476-VC, 2021 WL 774141 (N.D. Cal. Feb. 25, 2021). |

| 64 | 2/22/21, S.D. Fla. | Restaurant | "Both Florida law and the policy's plain language—'direct physical loss of or damage to property'—require actual, concrete damage to trigger coverage. . . . Plaintiff has failed to show that the suspension of operations or extra expenses were caused by direct physical loss of or damage to the property." *15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's* London, No. 20-23407-CIV, 2021 WL 896216, at *5, *7 (S.D. Fla. Feb. 22, 2021) |
|---|---|---|---|
| 65 | 2/19/21, N.D. Ohio | Restaurants | "[G]uided by . . . hornbook insurance law and by ordinary dictionary meanings, the Court finds that Plaintiffs' claim for loss of full use of their premises and for business interruption is precluded under the Zurich Policy. . . . Neither the COVID-19 virus nor the state government orders caused 'direct physical loss of or damage to' Plaintiffs' Insured Property." *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, No. 1:20-cv-1895, 2021 WL 663675, at *8 (N.D. Ohio Feb. 19, 2021) |
| 66 | 2/19/21, D. Mass | Real Estate Leasing Business | "Here, the term 'physical,' which 'involv[es] the material universe and its phenomena' and 'pertain[s] to real, *tangible* objects,' is an adjective modifying 'loss,' defined as, *inter alia*, 'the disappearance or diminution of value.' Black's Law Dictionary (11th ed. 2019) (emphases added). The term 'damage' also entails '[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body.' *Id.* Taken together, these terms require some enduring impact to the actual integrity of the property at issue. In other words, the phrase 'direct physical loss of or damage to' does not encompass transient phenomena of no lasting effect, much less real or imagined reputational harm." *SAS Int'l Ltd. v. Gen. Star Indem. Co.*, No. 20-11864-RGS, 2021 WL 664043, at *2 (D. Mass. Feb. 19, 2021) |
| 67 | 2/18/21, N.D. Ohio | Hotels | "[T]he ordinary and plain meaning of the phrase 'physical loss of or damage to' property requires a tangible, material destruction or deprivation of possession." *Ceres Enters., LLC v. Travelers Ins. Co.*, No. 1:20-cv-1925, 2021 WL 634982, at *9 (N.D. Ohio Feb. 18, 2021) |

| 68 | 2/18/21, N.D. Ill. | Hotel | "The plain wording of the phrase requires either a permanent disposition of the property due to a physical change ('loss'), or physical injury to the property requiring repair ('damage') . . . . Plaintiff has not and cannot allege either." *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, No. 20 C 3463, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021) |
|---|---|---|---|
| 69 | 2/17/21, N.D. Ohio | Catering Business | "Plaintiffs plausibly allege that governmental shutdown orders and the possible presence of the coronavirus itself interfered with their intended use of the properties as a hotel and banquet facility. Even so, Plaintiffs' property was not materially or perceptibly destroyed, ruined, or harmed, and they remain in possession of it. For these reasons, their alleged loss falls outside the plain meaning of 'direct physical loss of or damage to' the property." *Mikmar, Inc. v. Westfield Ins. Co.*, No. 5:20-CV-01313, 2021 WL 615304, at *6 (N.D. Ohio Feb. 17, 2021) |
| 70 | 2/17/21, N.D. Ohio | Restaurants | "[A]ccording to their ordinary meanings, 'physical loss of' property means material, perceptible destruction or deprivation of possession. 'Physical damage to' property means material, perceptible harm. In other words, the phrase intends a tangible loss of or harm to the insured property, in whole or in part. As the trigger for coverage, this policy language excludes financial or monetary losses resulting from the novel coronavirus, SARS-CoV-2, which occasioned this dispute for the simple reason that the virus did not work any perceptible harm to the properties at issue, even if (construing the allegations in Plaintiff's favor) the virus may be found on surfaces there." *Family Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-cv-01922, 2021 WL 615307, at *5 (N.D. Ohio Feb. 17, 2021) |
| 71 | 2/17/21, D. Minn. | Hotels, Restaurants, and Event Centers | "Here, it is not the presence of the virus on the premises that closed TPI's properties (or caused people to stop visiting those properties), but rather the executive orders meant to slow the virus's spread." *Torgerson Properties, Inc. v. Cont'l Cas. Co.*, No. 20-2184, 2021 WL 615416, at *2 (D. Minn. Feb. 17, 2021) |

| 72 | 2/16/21, S.D. Fl. | Restaurant | "Plaintiff's contention that its loss was 'direct' and 'physical' because 'it is possible or likely that COVID-19 may have been present at the insured premises[,]' while creative, is unavailing . . . . '[T]he mere presence of the virus on the physical structure of the premises' does not amount to 'direct physical loss.'" *Café La Trova LLC v. Aspen Spec. Ins. Co.*, No. 20-22055-CIV, 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021) (citation omitted) |
| --- | --- | --- | --- |
| 73 | 2/16/21, D.N.M. | Restaurant | "Plaintiff does not contend that there was a 'tangible,' structural alteration to the property but posits that presence of or even the potential existence of COVID-19 on or nearby the premises is sufficient to trigger coverage. . . . Consistent with other courts evaluating the effects of coronavirus on damage to property in the insurance context, the Court finds that the phrase 'direct physical loss' unambiguously requires something more tangible than what Plaintiff has set forth in its Complaint. *Cafe Plaza De Mesilla Inc. v. Continental Cas. Co.*, No. 2:20-cv-354, 2021 WL 601880, at *7 (D.N.M. Feb. 16, 2021) |
| 74 | 2/16/21, D.Nev. | Advertising Business | "The Levy companies fail to allege 'direct physical loss or damage' that might trigger Federal Insurance's policy coverage. . . . The Levy companies do not allege any physical losses or damage to their premises; they instead merely assert that they were 'ordered to close' and 'were not permitted to conduct business operations.'" *Levy Ad Grp., Inc. v. Chubb Corp.*, No. 220CV00763JADDJA, 2021 WL 777210, at *3 (D. Nev. Feb. 16, 2021) |

| 75 | 2/12/21, E.D. Pa. | Restaurant and Bar | "Whiskey Flats argues that there is no scientific proof that the coronavirus has not caused physical damage to Plaintiff's property. However, scientific proof is not necessary. It is apparent to the Court that the Plaintiff's income losses were caused by the Shutdown Orders and modifications to its operations due to the risk of transmission of the virus at its premises, not some speculative, unprovable physical damage or unknown condition of the property . . . .  Plaintiff was required to comply with the Shutdown Orders regardless of the presence or absence of the coronavirus on its property, so what any *post hoc* discovery could reveal would not change the cause of the Plaintiff's income losses." *Whiskey Flats, Inc. v. Axis Ins. Co.*, No. 20-3451, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021) |
|----|----|----|----|
| 76 | 2/8/21. M.D. Pa. | Restaurant | "Plaintiffs here do not allege that the physical structure that houses their restaurant was physically unusable —just that the intended purpose of *the business* (serving food to patrons indoors) could not be executed due to the state's guidance to avoid public gatherings. . . .  The business may have suffered economically, but the building did not suffer any kind of physical or structural impairment as required to fall under the Business Income coverage provision." *Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 1:20-cv-781, 2021 WL 422607, at *6 (M.D. Pa. Feb. 8, 2021) (emphasis in original). |
| 77 | 2/8/21, N.D. Cal. | Restaurant | "'[D]irect physical loss of property does not include the temporary loss of use due to the governmental Stay-at-Home orders,' . . . [because] plaintiff 'did not allege that it lost access to the properties, but merely that it was not allowed to operate its business out of the properties.'" *Protégé Restaurant Partners, LLC v. Sentinel Ins. Co., Ltd.*, No. 20-cv-03674-BLF, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) (citation omitted) |

| 78 | 2/4/21, M.D. Fl. | Chain of Restaurants | "Florida courts have examined virtually identical policies and held that "direct physical" modifies both 'loss' and 'damage'; therefore, to be covered, an interruption in business 'must be caused by some physical problem with the covered property.'" *First Watch Rests., Inc. v. Zurich Am. Ins. Co.*, No. 8:20-cv-2374, 2021 WL 390945, at *4 (M.D. Fla. Feb. 4, 2021) (citation omitted) |
|----|------------------|----------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 79 | 2/3/21, S.D. Cal. | Restaurant | "In an[] attempt to claim a physical loss or damage, Plaintiffs allege that COVID-19 droplets have physically spread and proliferated 'onto virtually every surface and object in, on, and around Wellness Eatery and its surrounding environs. (Doc. No. 1-2 at ¶19.) However, Plaintiffs do not plausibly allege that that their business income losses were due to the presence of COVID-19 on their property. Rather, Plaintiffs' business income losses were due to the government Closure Orders prohibiting on-site dining." *Wellness Eatery La Jolla LLC v. Hanover Ins. Grp.*, No. 20cv1277, 2021 WL 389215, at *6 (S.D. Cal. Feb. 3, 2021) |
| 80 | 2/1/21, C.D. Cal. | Gyms | "Several federal courts (including this Court) have found that under California law, COVID-related restrictions on commercial activity and individuals' activities did not constitute 'direct physical loss' or 'physical damage' to property in the insurance context . . . ." *Gym Mgmt. Servs., Inc. v. Vantapro Specialty Ins. Co.*, No. 20-9541, 2021 WL 647528, at *3 (C.D. Cal. Feb. 1, 2021) |
| 81 | 1/27/21, E.D. Pa. | Auto Title and Registration Business | "This Complaint does not allege any facts regarding the physical state of the premises. Instead, it alleges that it forewent business income during the closure period. Once the shutdown order lifted, Frank Van's could immediately resume business, without a period of restoration. That is because there was no damage to the property and the loss was only economic. . . . Frank Van's has not pled facts that COVID-19 caused physical damage or loss to its property to trigger Business Income coverage." *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the S.E.*, Civ. A. No. 20-2740, 2021 WL 289547, *6 (E.D. Pa. Jan. 27, 2021) |

| 82 | 1/27/21, M.D. Fl. | Restaurant | "Rococo does not allege that COVID-19 required removal or replacement of any property or items in the insured restaurant.  Rather . . .  the surfaces allegedly contaminated by COVID-19 seem to only require cleaning to fix . . . . [A]n item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, No. 8:20-cv-2481, 2021 WL 268478, at *5 (MD. Fl. Jan. 27, 2021) (citations omitted) |
| 83 | 1/27/21, N.D. Ill. | Hotel | "[P]laintiff has not alleged any physical alteration or structural degradation to the premises, nor the need to 'repair,' 'replace,' or 'restore' any physical element of the property in order to reopen for business." *Bend Hotel Dev't Co. v. Cincinnati Ins. Co.*, No. 20 C 4636, 2021 WL 271294 (N.D. Ill. Jan. 27, 2021) |
| 84 | 1/26/21, N.D. Cal. | Salon Owner | "Plaintiff's allegations of temporary loss of access and use, which claim no loss requiring repair, rebuilding, or replacement, are plainly insufficient. The Court thus finds that Plaintiff has not plausibly alleged 'direct physical loss of or damage to' property, as required by the Policy." *Colgan v. Sentinel Ins. Co., Ltd.*, No. 20-CV-04780-HSG, 2021 WL 472964, at *3 (N.D. Cal. Jan. 26, 2021) |
| 85 | 1/26/21, N.D. Ga. | Law Firm | "[T]he 'likely' presence of COVID-19 cannot be regarded as a physical change, as it does not and has not physically altered the insured property. Although the virus is transmitted through the air and may adhere to surfaces briefly, there is no indication that it causes any sort of physical change to the property it touches. The mere fact that it may rest unseen on surfaces before it can be cleaned up with a disinfectant is not the kind of direct physical change contemplated by Georgia law." *Karmel Davis & Assocs., Att'ys-at-L., LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-CV-02181-WMR, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) |

| 86 | 1/25/21, S.D. Ill. | Restaurants | "[B]ecause Covid-19 does not cause tangible loss or damage to the physical dimension of Plaintiff's property, and Plaintiff has not alleged that Covid-19 physically altered the appearance, or some material dimension of its property, Plaintiff has failed to allege a direct physical loss necessary to trigger coverage under the policy." *TJBC, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-815, 2021 WL 243583, at *5 (S.D. Ill. Jan. 25, 2021) |
|---|---|---|---|
| 87 | 1/22/21, M.D. Fla. | Furniture Store Operator | "[T]he Court concludes that the mere presence of the coronavirus on RTG's property does not constitute physical damage or loss. This is because COVID-19's presence on property is temporal. In other words, COVID-19's temporary physical presence on RTG's property is insufficient to constitute 'direct physical loss of or damage to' property." *R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, No. 8:20-CV-2323-T-30AEP, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021) |
| 88 | 1/22/21, S.D. Cal. | Restaurants | "The Court agrees with Defendant that allegations showing the alleged presence of COVID-19 in or on the covered property are not sufficient to trigger coverage when direct physical loss of or damage to property is required. If, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result. After all, disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces." *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, No. 3:20-cv-01129, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) |
| 89 | 1/21/21, W.D. Tex. | Restaurant Operator | "Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant." *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2021 WL 972878, at *8 (W.D. Tex. Jan. 21, 2021) |

| 90 | 1/19/21, D.N.J. | Sports Team Owners | "Plaintiffs have not alleged any facts that support a showing that their properties were physically damaged. Instead, Plaintiffs plead that the Stay-At-Home Orders and resultant actions by the government and others forced the cessation of the minor league baseball season and caused Plaintiffs to lose income and incur expenses. This is not enough." *7th Inning Stretch LLC v. Arch Ins. Co.*, No. CV208161SDWLDW, 2021 WL 800595, at *3 (D.N.J. Jan. 19, 2021) |
|---|---|---|---|
| 91 | 1/15/21, W.D. Pa. | Restaurant and Tavern | "The starting point of the analysis is 'direct.' The ordinary usage recounted presupposes a level of immediacy that is simply not present in 1 S.A.N.T.'s theory of coverage. Moreover, when combined with 'physical', there is no reasonable question that the Policy language presupposes that the request for coverage stems from an *actual impact* to the property's structure, rather than the diminution of its economic value because of governmental actions that do not affect the structure." *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, No. 2:20-cv-862, 2021 WL 147139, at *4-7 (W.D. Pa. Jan. 15, 2021) (emphasis in original). |
| 92 | 1/15/21, N.D. Fla. | Dentist | "Webb Dental seems to acknowledge this physical-injury limitation; its theory is that when local orders forced it to limit operations, it sustained a 'physical loss.' But Webb Dental acknowledges there has been no physical damage to the property. That is enough to doom its claim." *Webb Dental Assocs. DMD PA v. Cincinnati Indem. Co.*, No. 1:20-CV-250-AW-GRJ, 2021 WL 800113, at *2 (N.D. Fla. Jan. 15, 2021) |
| 93 | 1/14/21, E.D. Pa. | Restaurant and Beer Garden | "[L]oss of use caused by government orders cannot constitute 'direct physical loss of ... property' . . . . Nor would coverage for actual or threatened coronavirus contamination make sense in connection with the Period of Restoration language, which ties business income coverage eligibility to the period during which the property can be 'repaired, rebuilt, or replaced.'" *Independence Rest. Group v. Certain Underwriters at Lloyd's, London*, No. 20-2365, 2021 WL 131339, at *7 (E.D. Pa. Jan. 14, 2021) |

| 94 | 1/14/21, E.D. Pa. | Art Gallery | "To the extent that Moody Jones alleges that its 'direct physical loss of or damage to' its property is the inability to use the property as intended because of the government closure orders, those losses do not bear a causal connection to the physical condition of its premises." *Moody v. Hartford Fin. Servs. Group, Inc.*, No. 20-2856, 2021 WL 135897, at *6 (E.D. Pa. Jan. 14, 2021) |
|---|---|---|---|
| 95 | 1/14/21, E.D. Pa. | Restaurant | "TAQ's Amended Complaint lacks any allegations about the existence of anything affecting the physical condition of its premises. Thus, its losses are a loss of use untethered from the physical condition of the property itself." *TAQ Willow Grove, LLC v. Twin City Fire Ins. Co.*, No. 20-3863, 2021 WL 131555, at *5-6 (E.D. Pa. Jan. 14, 2021) |
| 96 | 1/14/21, E.D. Pa. | Hearing Aid Business | "If mere loss of use counted as 'direct physical loss of' property, the 'period of restoration' language would be rendered a nullity. Business Income Coverage and Extra Expense coverage are only provided during the 'period of restoration,' defined in part as the time that begins 'with the date of direct physical loss or damage' and ends on the earlier of the date when the property is either 'repaired, rebuilt or replaced' or when 'business is resumed at a new permanent location.' Built into the Business Income Coverage and related provisions, then, is the idea that there must be something to repair, rebuild, or replace – none of which exists for mere loss of use untethered to a physical condition of the property." *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *5-7 (E.D. Pa. Jan. 14, 2021) |
| 97 | 1/14/21, E.D. Pa. | Restaurants, Grocery Store, and Wine Shop | "Plaintiffs allege that their businesses were not considered 'essential,' and were therefore subject to a variety of Closure Orders issues by state and local authorities, preventing Plaintiffs from operating their businesses or limiting their operations. This is not loss of or damage to property within the meaning of the Policies." *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, No. 20-3033, 2021 WL 131657, at *5 (E.D. Pa. Jan. 14, 2021) |

| 98 | 1/14/21, E.D. Pa. | Optical Businesses | "Its insured properties, Omega alleges, have been physically impacted because they have been contaminated by COVID-19 and remain at imminent risk of COVID-19 contamination given the nature of its optical practice. . . . This is not loss of or damage to property within the meaning of the Policy. Omega's allegations reveal that it was denied access to its insured properties for non-emergent optical services  . . . However, no order by any authority required optical offices like Omega to close completely. Instead, Omega could remain open for emergency procedures. Thus, Omega's property remained inhabitable and usable, albeit in limited ways. We also note that coverage for actual or threatened COVID-19 contamination makes little sense in connection with the Period of Restoration language, which ties business income coverage eligibility to the period during which the property can be 'repaired, rebuilt, or replaced.'" *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. 20-4238, 2021 WL 131282, at *5 (E.D. Pa. Jan. 14, 2021) |
|----|----|----|----|
| 99 | 1/14/21, C.D. Cal. | Restaurant Operator | "Plaintiff's inability to operate its restaurant does not constitute a 'direct physical loss' unless some external force caused a physical alteration to the restaurant." *Roundin3rd Sports Bar LLC v. Hartford*, No. 220CV05159SVWPLA, 2021 WL 647379, at *4 (C.D. Cal. Jan. 14, 2021) |
| 100 | 1/13/21, S.D. Fl. | Restaurants | "[T]he Plaintiff here simply does not provide the Court with adequate reason to depart from the nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage under the policy at issue here." *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, Civ. A. No. 20-23586, 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) |
| 101 | 1/13/21, N.D. Cal. | Art Retailer | "Direct physical loss of property does not include the temporary loss of use due to the governmental Stay-at-Home Orders. Notably, KBFA does not allege that it lost access to the properties, but merely that it was not allowed to operate its business out of the properties." *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-04783-SK, 2021 WL 141180, at *4 (N.D. Cal. Jan. 13, 2021) |

| 102 | 1/12/21, N.D. Cal. | Marketing Agency | "[C]ontaminated surfaces can be disinfected and cleaned . . ., thereby demonstrating COVID-19 does not cause 'physical alteration' or 'physical change in the condition' of property." *O'Brien Sales & Mktg. v. Transportation Ins. Co.*, No. 20-cv-02951-MMC, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021) |
|---|---|---|---|
| 103 | 1/12/21, C.D. Cal. | Hotels and Office Rental Space | "The meaning of 'direct physical damage' and 'direct physical loss' is well established under California law. Property must undergo a 'distinct, demonstrable, physical alteration.' 'Detrimental economic impact" does not suffice." *BA LAX, LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-06344, 2021 WL 144248, at *3 (C.D. Cal. Jan. 12, 2021) (internal citation omitted) |
| 104 | 1/11/21, S.D. Fl. | Catering Business | "[A]lthough the Complaint alleges (with much speculation) that COVID-19 is present on Plaintiff's properties and has somehow caused an undescribed 'distinct alteration' to the premises . . . [t]here is no 'direct physical loss' where the alleged harm consists of the mere presence of the virus on the physical structure of the premises." *Mena Catering, Inc. v. Scottsdale Ins. Co.*, No. 1:20-cv-23661, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) |
| 105 | 1/11/21, S.D. Fl. | Property Owner | "Here, Plaintiff fails to allege that the business loss that it suffered was caused by any physical problem, nor that the Properties suffered a diminution of value in some way. It alleges solely that the COVID-19 pandemic generally caused the County to issue emergency directives effectively closing Plaintiff's businesses.  However, courts across the country have held that coverage due to COVID-19 government shutdown orders does not exist where, as here, policyholders fail to plead facts showing physical property damage." *Island Hotel Properties, Inc. v. Fireman's Fund Ins. Co.*, No. 4:20-CV-10056-KMM, 2021 WL 117898, at *3 (S.D. Fla. Jan. 11, 2021) (internal citations omitted) |

| 106 | 1/8/21, S.D. Fl. | Marketing Business | "Plaintiff has failed to allege facts which would permit the Court to draw a plausible inference that the virus caused direst physical loss to Plaintiff's property under the terms of the Policy." *Digital Age Marketing Group v. Sentinel Ins. Co*, No. 20-61577, 2021 WL 80535, at *5 (S.D. Fl. Jan. 8, 2021) |
|---|---|---|---|
| 107 | 1/7/21, C.D. Cal. | Retail Store & Nightclub Operator | "Plaintiffs have not suffered physical loss or damage. Nothing physical has happened to Plaintiffs' property, and, presumably, the property could be repurposed for other uses. Plaintiffs are complaining about a loss of intended use, not a physical loss of, or damage to, their property." *Rialto Pockets, Inc. v. Certain Underwriters At Lloyd's, Including Beazley Furlonge Ltd*, No. CV207709DSFJPRX, 2021 WL 267850, at *1 (C.D. Cal. Jan. 7, 2021) |
| 108 | 1/5/21, N.D. Ga. | Salon | "Since 'direct physical' modifies both loss and damage, any interruption in business must be caused by some physical problem with the covered property . . . . The mere threat of exposure is insufficient to trigger coverage. There is a similar risk of exposure to the virus in any public setting, regardless of artful pleading as to the likelihood of the presence of the virus. Even if the Plaintiff did allege that COVID-19 was physically present in the premises, the Court still does not find that the presence of COVID-19 particles on the Plaintiff's property, without more, constitutes a 'direct physical loss or damage to' the property. Routine cleaning performed with greater frequency and care eliminates the virus on surfaces." *K D Unlimited Inc. v. Owners Ins. Co.*, No. 1:20-CV-2163-TWT, 2021 WL 81660, at *4-5 (N.D. Ga. Jan. 5, 2021) |

| 109 | 1/5/21, S.D. W. Va. | Restaurants | "I am also unpersuaded by Plaintiff's alternative argument that the presence of COVID-19 at the covered properties created an altered physical condition that would trigger coverage under the policy. To find that a physical loss or damage has taken place at the covered Bluegrass properties under these conditions would be to ignore the reality that many restaurants and cafes have continued to operate during the pandemic. 'COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property.'" *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, No 2:20-cv-00414, 2021 WL 42050, at *5 (S.D. W. Va. Jan. 5, 2021) (citation omitted) |
|-----|---------------------|-------------|------|
| 110 | 1/4/21, N.D. Cal. | Event Venue | "Palmdale plausibly pleads only that its claimed losses were the result of government closure orders. That temporary dispossession does not state a claim. The end date for the period of restoration — when the property is repaired, rebuilt, or replaced — also shows that the damage covered by the policy is physical and that Palmdale is not entitled to Business Income coverage." *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, No. 20-cv-06158, 2021 WL 25048, at *3 (N.D. Cal. Jan. 4, 2021) (internal citation omitted) |
| 111 | 1/4/21, N.D. Cal. | Restaurant | "The majority view — including in this district — is that 'direct physical loss' provisions, like the ones in the insurance contract here, do not cover lost business income or expenses resulting from closure orders like the one here." *Baker v. Oregon Mutual Insurance Co.*, No. 20-cv-05467, 2021 WL 24841, at *2 (N.D. Cal. Jan. 4, 2021) |

| 112 | 1/4/21, N.D. Ga. | Dental Office | "By all accounts, the structural integrity of the dental offices' 'walls, doors, windows, and other external and internal physical barriers' remain entirely unscathed despite the proliferation and persistence of COVID-19. Any "actual change" is instead premised on the omnipresent specter of COVID-19, a generalized 'alteration' experienced by every home, office, or business that welcomes individuals into an indoor setting across the globe. But absent from the Amended Complaint are any allegations that Plaintiffs' offices have sustained any modicum of physical damage that renders them unsatisfactory in any way. To accept Plaintiffs' broad interpretation of the Policies' language at face value would be to render the term 'physical' a nullity . . . ." *Roy H. Johnson DDS v. The Hartford Financial Services Group*, 1:20-cv-0200, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021) |
|-----|------------------|---------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 113 | 12/30/20, S.D. Fla. | Salon and Spa | "Plaintiff's allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic." *Atma Beauty, Inc. v. HDI Global Spec SE*, No. 1:20-cv-21745, 2020 WL 7770398, at *4 (S.D. Fla. Dec. 30, 2020) |
| 114 | 12/30/20, W.D. Tex. | Restaurant | "[T]here is no coverage for 'direct physical loss of or damage to property' because there is no 'distinct, demonstrable, physical alteration of the property.' Although Steiner Steakhouse may have suffered monetary losses, consumers may have avoided Steiner Steakhouse out of fear, and levers of government may have suspended Steiner Steakhouse's indoor dining business, none of these theories of recovery articulate a physical loss that is cognizable in Texas." *Steiner Steakhouse, LLC v. Amco Ins. Co.*, No. 1:20-CV-858-LY, 2020 WL 8879041, at *4 (W.D. Tex. Dec. 30, 2020) |

| 115 | 12/30/20, C.D. Cal. | Surgical Practice | "[A] compensable 'direct physical loss' requires 'some *external force*' to 'have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term.'" *Jonathan Oheb MD, Inc. v. Travelers Casualty Insurance Co.*, No. 2:20-cv-08478, 2020 WL 7769880, at *3 (C.D. Cal. Dec. 30, 2020) (citation omitted; emphasis in original) |
| --- | --- | --- | --- |
| 116 | 12/28/20, S.D. Fl. | Restaurants | "'[D]irect physical' modifies both 'loss' and 'damage.' Therefore, under the Policy, any 'interruption in business must be caused by some physical problem with the covered property . . . .' That is, the damage or loss must be actual." *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, No.1:20-cv-21827, 2020 WL 7699672, at *3-4 (S.D. Fla. Dec. 28, 2020) (internal citation omitted) |
| 117 | 12/28/20, N.D. Cal. | Dental Office | "Plaintiff suggests that the alleged losses are not purely economic because human droplets containing COVID-19 have either damaged the premises or pose a significant risk of damaging the premises. But Plaintiff has not alleged that any covered property 'damaged' by droplets containing the virus is unrecoverable. In other words, Plaintiff's allegations of 'direct physical loss' do not even fall within an expansive interpretation of the phrase." *Trinh v. State Farm General Insurance Co.*, No. 5:20-cv-04265, 2020 WL 7696080, at *5 (N.D. Cal. Dec. 28, 2020) |
| 118 | 12/23/2020, M.D. Tenn. | Restaurant | "The business income provision covers losses sustained by the suspension of operations during the 'period of restoration.' This term is given special meaning in the policy. It is defined as ending 'when the property . . . should be repaired, rebuilt or replaced.' This definition informs that the loss or damage to the property must be physical, affecting the structure of the property." *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indemnity Co.*, No. 3:20-cv-694, 2020 WL 7641184, at *8 (M.D. Tenn. Dec. 23, 2020) (citation omitted) |

| 119 | 12/22/20, N.D. Ill. | Hotel | "Bradley Hotel does not allege that the suspension of operations was a result of any physical loss of or damage to the property. It does not allege that the physical property was changed or altered in any way. Instead, Bradley Hotel alleges that the suspension of service was due to Governor Pritzker's Executive Orders, not for any reason related to the hotel property. Thus, Bradley Hotel's allegations amount to the 'forced closure of the premises for reasons extraneous to the premises themselves, [and] adverse business consequences that flow from such closure.' Under the unambiguous terms of the contract, this is not enough to trigger coverage." *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.*, No. 20 C 4249, 2020 WL 7889047, at *4 (N.D. Ill. Dec. 22, 2020) (internal citation omitted) |
| 120 | 12/21/20, N.D. Ohio | Restaurant | "Santo's does not plead the existence of any physical force that destroyed, compromised, or injured Santo's property. There is no such physical force that rendered Santo's property unusable or inaccessible. The Closure Orders are not a physical intrusion on Santo's property." *Santo's Italian Café LLC v. Acuity Ins. Co.*, No. 1:20-cv-01192, 2020 WL 7490095, at *9 (N.D. Ohio Dec. 21, 2020) |
| 121 | 12/21/20, N.D. Cal. | Restaurant | "Mortar and Pestle has failed, however, to add any allegations sufficient to show COVID-19 has caused a distinct, demonstrable, physical alteration of the restaurant or a physical change in its condition. Moreover, even assuming Mortar and Pestle had alleged COVID-19 has been, at some point, physically present in the restaurant, the presence of the virus itself, or of individuals infected with the virus, at Mortar and Pestle's business premises or elsewhere does not constitute direct physical loss of or damage to property." *Mortar & Pestle Corp. v. Atain Spec. Ins. Co.*, No. 20-cv-03461, 2020 WL 7495180, at *4 (N.D. Cal. Dec. 21, 2020) (internal citation and quotation marks omitted) |

| 122 | 12/17/20, M.D. Fla. | Restaurant | "There must be tangible damage to property for a 'direct physical loss' to exist. Based on the allegations of the Complaint, Plaintiff did not suffer any such tangible damage." *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*, 8:20-cv-00771-CEH-JSS, ECF No. 53 at p. 15 (M.D. Fla. Dec. 17, 2020) |
| --- | --- | --- | --- |
| 123 | 12/17/20, E.D. Pa. | Restaurant Operator | "Property damage is a distinct, demonstrable, physical alteration of the property. Pure economic losses are intangible and do not constitute property damage. There was no physical damage to the insureds or others' properties alleged in the amended complaints." *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. CV 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020) (internal citations omitted) |
| 124 | 12/15/20, S.D.N.Y. | Art Gallery | "Nothing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff." *10012 Holdings, Inc. v. Hartford Fire Ins. Co.*, 20 Civ. 4471, 2020 WL 7360252, at *2 (S.D.N.Y. Dec. 15, 2020) |
| 125 | 12/14/20, D.N.J. | Music Production Company | "Here, Plaintiff has not alleged any facts that support a showing that its property was physically damaged. Instead, Plaintiff pleads that by forcing him to close his business, the Stay-At-Home Orders caused Plaintiff to lose income and incur expenses. This is not enough." *Re: Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, No. CV2011771SDWLDW, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) |
| 126 | 12/14/20, E.D. Mich. | Dentist | "Like other viruses, COVID-19 injures people but does not seem to cause any lasting damage to physical property. Because Plaintiff's claim, as pled, alleges only a temporary loss of use of Plaintiff's property, the tangibility requirement implicit in the policy forecloses a claim under the practice income provision." *Kirsch v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at *6 (E.D. Mich. Dec. 14, 2020) |

| 127 | 12/11/20, S.D.N.Y. | Restaurant | "Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'" *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) |
| --- | --- | --- | --- |
| 128 | 12/11/20, S.D. Iowa | Restaurant Operator | "Reading the policy language as a whole, the policy is unambiguous in its requirement that an insured suffer 'direct physical loss of or damage' to the insured property. Further, the Court concludes the phrase 'direct physical loss of or damage' requires tangible alteration of property to trigger coverage. . . . Plaintiffs have failed to allege a tangible loss or alteration to property that is sufficient to trigger coverage under the Business Income provision." *Gerleman Mgmt., Inc. v. Atl. States Ins. Co.*, No. 4:20-CV-183-JAJ, 2020 WL 8093577, at *5 (S.D. Iowa Dec. 11, 2020) |
| 129 | 12/9/20, N.D. Cal. | Restaurant | "The Amended Complaint falls short of alleging that Plaintiff's property sustained any physical damage. The Court thus finds that Plaintiff's allegations are insufficient as a matter of law to establish coverage under the Business Income or Extra Expense Coverage sections." *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, 20-cv-80677, 2020 WL 7251643, at *5 (S.D. Fla. Dec. 9, 2020) |
| 130 | 12/9/20, N.D. Cal. | Event Planning Business | "Business losses resulting from the temporary inability to access an unharmed property are not 'direct physical loss of or damage to' property." *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, No. 20-cv-05441-CRB, 2020 WL 7247207, at *3 (N.D. Cal. Dec. 9, 2020) |
| 131 | 12/7/20, E.D. Pa | Dentist | "[T]here must be some sort of physical damage to the property," which is not met when the "business structure [i]s inhabitable and usable, though on a limited basis." *Kessler Dental Assocs., P.C. v. The Dentists Ins. Co.*, No. 2:20-cv-03376-JDW, 2020 WL 3891430, at *4 (E.D. Pa. Dec. 7, 2020) |

| 132 | 12/7/20, S.D. Fla. | Restaurant | "[T]he Amended Complaint falls short of alleging that Plaintiffs' properties sustained any physical damage. The Court thus finds that Plaintiffs' allegations are insufficient as a matter of law to establish coverage under the Business Income or Extra Expense Coverage sections." *El Novillo Restaurant v. Certain Underwriters at Lloyd's, London*, No. 1:20-cv-21525, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) |
|---|---|---|---|
| 133 | 12/7/20, S.D. Iowa | Restaurant | "[T]he Court concludes the phrase 'direct physical loss of or damage to property' requires a physical invasion and loss of use is insufficient to trigger coverage without physical damage to the insured properties." *Palmer Holdings & Investments, Inc. v. Integrity Ins. Co.*, No. 4:20-cv-154, 2020 WL 7258857, at *9 (S.D. Iowa Dec. 7, 2020) |
| 134 | 12/7/20, E.D. Pa | Retail Business | "[T]he term 'physical loss' . . . is only reasonably read in context as meaning a distinct, demonstrable, physical alteration of the property." *Sultan Hajer dba Rug Outlet v. Ohio Sec. Ins. Co.*, No. 6:20-cv-00283, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020) |
| 135 | 12/3/20, C.D. Cal. | Office Building Operator | "COVID-related restrictions on commercial activity and individuals' activities do not constitute 'direct physical loss' or 'physical damage' to property in the insurance context." *Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-04647-GW-MAA, ECF No. 33 (C.D. Cal. Dec. 3, 2020) |
| 136 | 12/3/20, E.D. Pa | Restaurant Operator | "Plaintiffs' loss of business income as a result of COVID-19 and the Governor's Orders does not constitute direct 'physical loss'" because "there is no physical component to Plaintiffs' loss" and "Plaintiffs maintain the ability to operate at their premises, albeit on a limited basis." *4431 Inc. v. Cincinnati Ins. Cos.*, No. 5:20-cv-04396, 2020 WL 7075318, at *13 (E.D. Pa. Dec. 3, 2020) |
| 137 | 12/3/20, D. Kan. | Wholesale Distributor | "[D]irect physical loss or damage to the property requires a tangible, actual change to or intrusion on the covered property." *Promotional Headwear Int'l v. The Cincinnati Ins. Co.*, No. 20-cv-2211-JAR-GEB, 2020 WL 7078735, at *7 (D. Kan. Dec. 3, 2020) |

| 138 | 12/2/20, W.D. Mo. | Restaurant | "[T]he Court agrees with Defendant that 'direct physical loss of or damage to property' requires physical alteration of property, or, put another way, a tangible impact that physically alters property . . . [and] does not encompass simple deprivation of use." *Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *4 (W.D. Mo. Dec. 2, 2020) |
|---|---|---|---|
| 139 | 11/30/20, E.D. Pa | Spa | "Business income coverage does not apply" because "there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement. The Covid-19 pandemic does not fall within that definition." *Toppers Salon & Health Spa v. Travelers Prop. Cas. Co.*, No. 2:20-cv-03342-JDW, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020) |
| 140 | 11/30/20, S.D. Iowa | Restaurants & Bars | "Plaintiffs have failed to allege facts sufficient to qualify for Business Income coverage. Plaintiffs allege that the proclamation caused them direct physical loss or damage by precluding customers from patronizing their business, precluding them from conducting business, and frustrating the intended purpose of their businesses. Although Plaintiffs attempt to paint their losses as physical, they have essentially pleaded loss of use, which is insufficient to establish a direct physical loss." *Whiskey River on Vintage, Inc. v. Illinois Cas. Co.*, No. 4:20-CV-185-JAJ, 2020 WL 7258575, at *10 (S.D. Iowa Nov. 30, 2020) (internal citations omitted) |
| 141 | 11/30/20, W.D. Mo. | Flower Shop | "The Amended Complaint does not allege that there was a 'physical loss of' or 'physical damage to' Plaintiff's business; in fact, there are no allegations about anything 'physical' in connection with Plaintiff's business at all." *BBMS, LLC v. Cont'l Cas. Co.*, No. 20-0353-CV-W-BP, 2020 WL 7260035, at *5 (W.D. Mo. Nov. 30, 2020) |
| 142 | 11/24/20, C.D. Cal | Dentist | "[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property.'" *Selane Products, Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-07834, 2020 WL 7253378, at *4 (C.D. Cal. Nov. 24, 2020) (citation omitted) |

| 143 | 11/19/20, N.D. Ill. | Tavern | "[L]oss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property." *T&E Chicago LLC v. The Cincinnati Ins. Co.*, No. 20 C 4001, 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020) |
|---|---|---|---|
| 144 | 11/12/20, C.D. Cal | Retail Business | "Plaintiff plausibly alleges only that California's COVID-19 restrictions interfered with the use or value of its property, not that the restrictions caused direct physical loss or damage. . . . There is no coverage under the Policy for Plaintiff's loss of business caused by the COVID-19 orders." *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, No. SACV2001713CJCJDEX, 2020 WL 6865774, at *3 (C.D. Cal. Nov. 12, 2020) |
| 145 | 11/9/20, N.D. Cal. | Retail Store | Plaintiff "has not alleged any direct physical anything that happened to or at its specific properties. Moreover, it has not been dispossessed or deprived of any specific property; its inventory and equipment remain." *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No: 20-cv-03750-WHO, 2020 WL 6562332, at *6 (N.D. Cal. Nov. 9, 2020) |
| 146 | 11/9/20, W.D. Okla. | Non-Profit | "Alleging a direct physical loss unambiguously requires a showing of tangible damage. Goodwill failed to allege it suffered any tangible damage, and therefore, its claim is subject to dismissal." *Goodwill Industries v. Phil. Indem. Ins. Co.*, No. 5:20-cv-00511-R, ECF No. 24, at 8 (W.D. Okla. Nov. 9, 2020) |
| 147 | 11/6/20, E.D. Pa. | Dentist | "[P]laintiff's property remained inhabitable and usable, albeit in limited ways. Plaintiff has failed to plead plausible facts that COVID-19 caused damage or loss in any physical way to the property so as to trigger coverage." *Brian Handel DMD, PC v. Allstate Ins. Co.*, Civ. Action No. 20-3198, 2020 WL 6545893, at *3 (E.D. Pa. Nov. 6, 2020) |

| 148 | 11/4/20, S.D. Miss. | Restaurant | "Plaintiff's Complaint fails to state a claim because it does not allege that any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property. Consequently, Plaintiff's contention that 'loss of property' reasonably includes loss of usability is not sustainable." *Real Hospitality, LLC v. Travelers Cas. Ins. Co.*, No 20-cv-00087-KS-MTP, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4, 2020) |
|---|---|---|---|
| 149 | 11/2/20, S.D. W.Va. | Creative Events Company | "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant." *Uncork & Create, LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D. W.Va. Nov. 2, 2020) |
| 150 | 11/2/20, S.D. Fl. | Dentist | "The Complaint does not allege any physical harm to Plaintiffs' Covered Property much less 'direct physical loss of or physical damage.'" *Nahmad v. Hartford Cas. Ins. Co.*, No. 1:20-cv-22833, 2020 WL 6392841, at *8 (S.D. Fl. Nov. 2, 2020) |
| 151 | 10/27/20, C.D. Cal. | Hotels | "Plaintiffs' Complaint establishes that they suffered a temporary loss of economically valuable use of their hotels due to a decrease in patronage or the Executive Orders. Plaintiffs do not claim that any property has undergone a physical alteration . . .. [A] 'detrimental economic impact' alone—as Plaintiffs have alleged—is not compensable under a property insurance contract." *West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663, 2020 WL 6440037, at *4 (C.D. Cal. Oct. 27, 2020) |
| 152 | 10/21/20, S.D. Ala. | Optometrist | "Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property—the Order did not immediately cause some sort of tangible alteration to Plaintiff's office. Rather, Plaintiff was only temporarily precluded from performing routine medical procedures while the Order was in effect." *Hillcrest Optical, Inc. v. Continental Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *7 (S.D. Ala. Oct. 21, 2020 |

| 153 | 10/19/20, C.D. Cal. | Law Firm | "An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *Travelers Casualty Ins. Co. v. Geragos & Geragos*, No. CV 20-3619 PSG (EX), 2020 WL 6156584, at *1 (C.D. Cal. Oct. 19, 2020) |
|---|---|---|---|
| 154 | 10/16/20, D. Minn. | Barber | "[G]overnmental action prohibiting the use of property, by itself, is not enough . . . to fall within the permissible realm of 'direct physical loss." *Seifert v. IMT Ins. Co*., Civil No. 20-1102, 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) |
| 155 | 10/6/20, N.D. Ga. | Restaurant | • Closure order "merely recognized an existing threat. It did not represent an external event that changed the insured property. Every physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change as a result of the Order." *Henry's Louisiana Grill, Inc., et al., v. Allied Insurance Company of Am*., 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6 2020) |
| 156 | 10/2/20, C.D. Cal. | Restaurant | • "Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property—not that the restrictions caused direct physical loss or damage." *Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemnity Company of Connecticut, et al.*, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *4 (C.D. Cal. Oct 2, 2020) |
| 157 | 9/29/20, S.D. Iowa | Dentist | • "OSPC does not allege any such 'physical' or 'accidental' loss, but instead contends its loss was caused by the COVID-19 coronavirus and the government actions to suspend temporarily non-emergency dental procedures. . . . [V]irus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance." *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, No. 4-30-CV-222, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020) |

A-39

| 158 | 9/28/20, M.D. Fla. | Display Fabricator | • "[Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under these circumstances." *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020) |
|---|---|---|---|
| 159 | 9/21/20 N.D. Ill. | Dentist | "Plaintiff has not pled any facts showing physical alteration or structural degradation of the property. Nothing about the property has been altered since March 2020." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020), reconsideration denied, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021) |
| 160 | 9/14/20, N.D. Cal. | Retail Store | "Mudpie alleges that its 'loss is caused by government closure orders and thus will last for however long those restrictions remain.' Because Mudpie's complaint contains no allegations of a physical force which 'induced a detrimental change in the property's capabilities.' the Court finds that Mudpie has failed to establish a 'direct physical loss of property' under its insurance policy." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) |
| 161 | 9/11/20 C.D. Cal. | Barber | "[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, No. 20-CV-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) |
| 162 | 9/10/20 C.D. Cal. | Restaurant Owner | "The Court finds that Plan Check has not suffered any physical loss of or damage to its properties and therefore its loss is not covered by the Policy." *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. CV 20-6954-GW-SKX, 2020 WL 5742712, at *3 (C.D. Cal. Sept. 10, 2020) |

| 163 | 9/3/20, E.D. Mich. | Chiropractic Office | "'[A]ccidental direct physical loss to Covered Property" is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property. Because Plaintiff has failed to state such damage, the complaint does not allege a Covered Cause of Loss." *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492 (E.D. Mich. 2020) |
|---|---|---|---|
| 164 | 9/2/2020, C.D. Cal. | Restaurant | "Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property—not that the restrictions caused direct physical loss or damage." *10E, LLC v. Travelers Indem. Co.*, 483 F. Supp. 3d 828 (C.D. Cal. 2020) |
| 165 | 8/26/20, S.D. Fla. | Restaurant | "Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining. But, for the reasons already stated, this cannot state a claim because the loss must arise to actual damage. And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical." *Malaube, LLC v. Greenwich Ins. Co.,* No. 20-22615-CIV, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) |
| 166 | 8/13/20, W.D. Tex. | Barber | "[T]he loss needs to have been a distinct, demonstrable physical alteration of the property. Thus, the Court finds that Plaintiffs fail to plead a direct physical loss." *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) |
| 167 | 5/14/20, S.D.N.Y. | Magazine Printer | "New York law is clear that this kind of business interruption [claim] needs some damage to the property" before there is coverage. *Social Life Magazine, Inc. v. Hartford Ins. Co*., No. 20-cv-03311, 2020 WL 2904834 (S.D.N.Y. May 14, 2020) |