**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARIO BADESCU SKIN CARE, INC.,

                         Plaintiff,

     v.

SENTINEL INSURANCE COMPANY,
LIMITED,

                        Defendant.

20 Civ. 6699 (AT)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

June 21, 2021

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

DISCUSSION ................................................................................................................. 3

    I.      Mario Badescu Ignores the New York Case Law .................................................. 3

    II.     A Handful of Outlier Cases Do Not Create Ambiguity ......................................... 5

    III.   Sentinel's Interpretation Does Not Conflate "Loss" and "Damage" ..................... 6

    IV.   Coverage Requires Damage that Is "Physical" ....................................................... 7

    V.     The Difference Between Loss "To" and Loss "Of" Property
           Does Not Help Mario Badescu ............................................................................... 8

    VI.   Mario Badescu Cannot Infer Coverage from the Lack of an Exclusion ................ 9

    VII.  Mario Badescu Cannot Rescue Its Complaint With Expert Reports
           That Are Outside the Pleadings and that In All Events
           Fail to Show Any "Direct Physical Loss" or "Direct Physical Damage" ............. 10

CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*10012 Holdings, Inc. v. Hartford Fire Insurance Co.*,
  20 Civ. 4471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020)............................................. 9

*Buffalo Xerographix, Inc. v. Sentinel Insurance Co.*,
  No. 1:20-cv-520, 2021 WL 2471315 (W.D.N.Y. June 16, 2021) ........................... 3, 9, 10

*Chief of Staff LLC v. Hiscox Insurance Co.*,
  No. 20 C 3169, 2021 WL 1208969 (N.D. Ill. Mar. 31, 2021) ......................................... 5

*Commercial Union Insurance Co. v. Flagship Marine Services, Inc.*,
  190 F.3d 26 (2d Cir. 1999)................................................................................................. 9

*Deer Mountain Inn LLC v. Union Insurance Co.*,
  1:20-cv-0984, 2021 WL 2076218 (N.D.N.Y. May 24, 2021) ............................... 3, 4, 7, 9

*deMoura v. Continental Casualty Co.*,
  20 Civ. 2912, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) ........................................... 7, 9

*Federal National Mortgage Association v. DuBois*,
  No. 15-3787, 2018 WL 5617566, at *6 (D.N.J. Oct. 30, 2018) ....................................... 1

*Financial Conduct Authority v. Arch Insurance (UK) Ltd*,
  [2021] UKSC 1, 2021 WL 00135827 (Jan. 15, 2021) ...................................................... 5

*Food for Thought Caterers Corp. v. Sentinel Insurance Co.*,
  No. 20-cv-3418, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021).................................... 7, 9, 12

*Graspa Consulting, Inc. v. United National Insurance Company*,
  No. 20-23245, 2021 WL 1540907 (S.D. Fla. April 16, 2021)........................................... 6

*Grimes v. Fremont General Corp.*,
  785 F. Supp. 2d 269 (S.D.N.Y. 2011)............................................................................. 11

*JD Cinemas v. Northfield Insurance Co.*,
  Index No. 609919/2020 (N.Y. Sup. Ct. Suffolk Cnty. Mar. 8, 2021) ............................... 3

*Jeffrey M. Dressel, D.D.S., v. Hartford Insurance Co. of the Midwest, Inc.*,
  No. 20-CV-2777, 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021)...................................... 9

*Khanukayev v. Times Square Alliance*,
  No. 08 Civ. 6832, 2010 WL 2836818 (S.D.N.Y. July 7, 2010) ..................................... 11

*Kim-Chee LLC v. Philadelphia Indemnity Insurance Co.*,
   No. 1:20-cv-1136, 2021 WL 1600831 (W.D.N.Y. April 23, 2021) ........................... 4, 12

*Law Debenture Trust Co. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010)................................................................................... 5

*MacMiles, LLC v. Eerie Insurance Exchange*,
   No. GD-20-7753 (Pa. Ct. Common Pleas May 25, 2021) ................................... 4

*MGN Logistics, Inc. v. Travelers Property Casualty Co.*,
   No. 16 CV 4301, 2017 WL 3780280 (N.D. Ill. Aug. 31, 2017) ........................ 7

*Michael Cetta, Inc. v. Admiral Indemnity Co.*,
   20 Civ. 4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020).................................... 4, 7, 9

*Moskal v. Unites States*,
   498 U.S. 103 (1990)............................................................................................... 6

*Office Solution Group, LLC v. National Fire Insurance Co.*,
   No. 1:20-cv-4736, 2021 WL 2403088 (S.D.N.Y. June 11, 2021) ..................... 3

*Pahuta v. Massey-Ferguson, Inc.*,
   170 F.3d 125 (2d Cir. 1999)................................................................................. 4

*Pilchman v. American Federation of State, County & Municipal Employees, AFL-CIO*,
   No. 10 CV 4976, 2011 WL 4526455 (S.D.N.Y. Sept. 29, 2011) ..................... 10

*Plan Check Downtown III, LLC v. AmGuard Insurance Co.*,
   485 F. Supp. 3d 1225 (C.D. Cal. 2020) ............................................................ 9

*Pyatt v. Raymond*,
   462 F. App'x 22 (2d Cir. 2012) ......................................................................... 11

*Raymond Corp. v. National Union Fire Insurance Co.*,
   833 N.E.2d 232 (N.Y. 2004)............................................................................... 9, 10

*Red Apple Dental PC v. The Hartford Financial Services Group, Inc.*,
   20 Civ. 3549 (S.D.N.Y. June 10, 2021)............................................................. 3

*Rokeach v. Hanover Insurance Co.*,
   No. 1:13-cv-5011-GHW, 2015 WL 2400097 (S.D.N.Y. May 19, 2015) ........... 7

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)................................................................................ 10

*Roundabout Theatre Co. v Continental Casualty Co.*,
   751 N.Y.S.2d 4 (1st Dep't 2002) ................................................................ passim

*Seifert v. IMT Insurance Co.*,
    No. 20-1102, 2021 WL 2228158 (D. Minn. June 2, 2021)................................................. 4

*Sharde Harvey DDS v. Hartford Financial Services Group, Inc.*,
    No. 20-cv-03350, 2020 WL 1034259 (S.D.N.Y. March 18, 2021) ................................... 9

*Studio 417, Inc. v. Cincinnati Insurance Co.*,
    478 F. Supp. 3d 794 (W.D. Mo. 2020) ......................................................................... 4

*Sullivan Country Fabrication, Inc. v. Selective Insurance Co.*,
    20-CV-05750, ECF 34 (S.D.N.Y. May 19, 2021) ........................................................... 3

*Whiskey Flats, Inc. v. Axis Insurance Co.*,
    No. 20-3451, 2021 WL 534471 (E.D. Pa. Feb. 12, 2021) ............................................... 13

## INTRODUCTION

Defendant Sentinel Insurance Company Ltd. ("Sentinel") moved to dismiss the Amended Complaint of plaintiff Mario Badescu Skin Care, Inc ("Mario Badescu") because the Amended Complaint fails to allege, as required to trigger insurance coverage, that any particular item of property suffered a "direct physical loss" or "direct physical damage." Mario Badescu's various opposition arguments cannot cure this fundamental issue.[1]

*First*, Mario Badescu largely ignores the growing and unanimous decisions from New York courts—now up to 20—that have rejected substantially similar claims based on the COVID-19 pandemic. Mario Badescu instead relies on a small minority of out-of-state cases that have adopted a "loss of use" theory—a theory that is contrary to a long line of New York caselaw, beginning with the binding decision in *Roundabout Theatre Co. v Continental Casualty Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002). The outlier, out-of-state cases cannot, as Mario Badescu suggests, create any ambiguity under New York law or overrule *Roundabout*.

*Second*, Mario Badescu incorrectly argues that Sentinel's position confuses the distinction in the policy between "loss of" property and "damage" to property. According to

---

[1] Mario Badescu halfheartedly suggests that this motion is procedurally improper because Sentinel could have moved to dismiss the original complaint. (Opp. 7.) But the Court authorized this motion, notwithstanding Mario Badescu having raised this same objection in response to Sentinel's pre-motion letter. (*See* ECF 30, at 2-3 (Mario Badescu arguing that the Court should deny leave to move to dismiss and allow only a summary judgment motion); ECF 32 (Court authorizing this motion).)  In any case, Sentinel has an unqualified right under Rule 12(b)(6) to respond to the Amended Complaint with a motion. *See Fed. Nat'l Mortgage Ass'n v. DuBois*, No. 15-3787, 2018 WL 5617566, at *6 (D.N.J. Oct. 30, 2018) (rejecting argument that a party was "procedurally barred from seeking to dismiss claims" in an amended complaint because an "amended complaint 'supersedes the original'" and because "nothing in the Federal Rules of Civil Procedure indicates that . . . [the moving party] was bound by its response to [the] original pleading") (citation omitted).

Mario Badescu, the phrase "loss of" property would be redundant of "damaged" property unless "loss of" property meant "loss of use" of property. But it is Mario Badescu that is confused. The two concepts do have independent meaning, without having to resort to the peculiar "loss of use" theory. In ordinary English, property that goes missing, that is stolen, or that is completely destroyed is "lost" whereas property in need of repair is "damaged."

      Third, Mario Badescu argues that the phrase "physical loss of or damage to" property should be read so that "physical" modifies the term "loss" only (not "damage")—meaning no "physical" damage is required for coverage. But Mario Badescu appears to have either misread the policy or is reading from a different one. The policy in this case is triggered by "physical loss or **physical damage** to" property. Thus, there must be damage that is "physical" in nature.

      Fourth, Mario Badescu makes much of the fact that the policy here refers to the loss "of" property, instead of (as in some other cases) loss "to" property. This distinction makes no difference here, particularly since the policy in *Roundabout* likewise used the loss "of" phrasing.

      Fifth, contrary to Mario Badescu's arguments, the lack of a virus exclusion is irrelevant because, under New York law, exclusions can only subtract from coverage, and cannot expand the scope of what the plain insuring language covers.

      Finally, Mario Badescu attaches to its opposition brief two expert reports. Documents outside the pleadings should not be considered on a motion to dismiss, but even if the Court were to consider the reports, they cannot rescue Mario Badescu's Amended Complaint. The one expert who tries to addresses the critical issue of "direct physical loss" and "direct physical damage" merely emphasizes all the ways that Mario Badescu had restricted use of its business premises. In other words, the expert is advancing the same "loss of use" theory that is insufficient as a matter of law.

**DISCUSSION**

I.     **MARIO BADESCU IGNORES THE NEW YORK CASE LAW**

Sentinel's moving papers cited fifteen New York decisions concluding insurance coverage for "direct physical loss" or "direct physical damage" to property is not triggered by business losses from the COVID-19 pandemic. (ECF 34 ("Sent. Br.") 8-9.)  There have since been six additional cases, for a total of *twenty-one*. *See Buffalo Xerographix, Inc. v. Sentinel Ins. Co.*, No. 1:20-cv-520, 2021 WL 2471315 (W.D.N.Y. June 16, 2021); *Office Solution Group, LLC v. National Fire Ins. Co.*, No. 1:20-cv-4736, 2021 WL 2403088 (S.D.N.Y. June 11, 2021); *Red Apple Dental PC v. The Hartford Fin. Servs. Grp., Inc.*, 20 Civ. 3549, ECF No. 58 (S.D.N.Y. June 10, 2021) (summary order) (transcript attached as Michael Reply Decl. Ex. A); *Deer Mountain Inn LLC v. Union Ins. Co.*, 1:20-cv-0984, 2021 WL 2076218 (N.D.N.Y. May 24, 2021); *Sullivan Country Fabrication, Inc. v. Selective Ins. Co.*, 20-CV-05750, ECF 34 (S.D.N.Y. May 19, 2021) (summary order) (transcript attached as Michael Reply Decl. Ex. B); *JD Cinemas v. Northfield Ins. Co.*, Index No. 609919/2020 (N.Y. Sup. Ct. Suffolk Cnty. Mar. 8, 2021) (attached as Michael Reply Decl. Ex. C).  No New York court has ruled to the contrary.

Mario Badescu's opposition all but ignores these cases,[2] and relies instead on out-of-state cases concluding that there can be a "direct physical loss" if the property owner merely suffers

---

[2] Mario Badescu asserts, without further explanation, that its case is different because it "sets forth the factual predicates upon which Plaintiff's claims are based." (ECF 19 ("Opp.") 6 (citing ECF 28 ("Am. Compl.") ¶¶ 23-26).) But the cited portions of its Amended Complaint merely set forth commonly understood features of the virus that causes COVID-19, such as the fact that it remains active on surfaces for a matter of "hours or days," and that it spreads from person-to-person, including via people who have no symptoms. (*Id*.) Taking these allegations as true, the Amended Complaint still lacks plausible, factual allegations as to how the virus's fleeting existence on surfaces, and transmission between people, amounts to property damage or loss. The New York COVID-19 cases refer to these same facts, yet still have uniformly dismissed substantially similar claims. *See, e.g.*, *Buffalo Xerographix*, 2021 WL 2471315, at * 2 (noting that "[i]nfectious airborne droplets and smaller aerosols that remain suspended in the air for hours after release are a major transmission source of the Virus"); *Deer Mountain*, 2021 WL

some "loss of use" of the premises. *Seifert v. IMT Ins. Co.*, No. 20-1102, 2021 WL 2228158, at

*5 (D. Minn. June 2, 2021) (concluding that coverage is triggered if there is "some injury to an

owner's ability to occupy and control property as intended"); *Studio 417, Inc. v. Cincinnati Ins.

Co.*, 478 F. Supp. 3d 794, 803 (W.D. Mo. 2020) (concluding that "significantly restricted access"

to a property triggers coverage); *MacMiles, LLC v. Eerie Ins. Exchange*, No. GD-20-7753 (Pa.

Ct. Common Pleas May 25, 2021) (copy attached as ECF 39-1), at 12 (concluding that "the term

'loss' reasonably encompasses . . . the loss of use of property absent any harm to property") (all

cited in Opp. 15-17, 23.)

But the First Department in *Roundabout* squarely *rejected* the argument that "the phrase

'loss of'" encompasses "loss of use of." 751 N.Y.S.2d at 8.  Accordingly, under New York law

"the phrase 'direct physical loss of or damage to property' . . . unambiguously *cannot* refer to

mere 'loss of use.'" *Deer Mountain*, 2021 WL 2076218, at *9 (emphasis in original). The

holding in *Roundabout* is binding in federal court, absent "persuasive evidence that the New

York Court of Appeals . . . would reach a different conclusion." *See Pahuta v. Massey-Ferguson,

Inc.*, 170 F.3d 125, 134 (2d Cir. 1999). Mario Badescu does not even try to meet that standard.

Mario Badescu instead tries to distinguish *Roundabout* on the ground that the insurance

policy there contained a "government authority" exclusion. (Opp. 21.) But the *Roundabout* court

found it "unnecessary . . . to rule on the applicability of the governmental authority exclusion,"

---

2076218, at *1 (noting the possibility of "asymptomatic transmission" or transmission "to
humans who touch contaminated surfaces or objects"); *Kim-Chee LLC v. Phil. Indem. Ins. Co.*,
No. 1:20-cv-1136, 2021 WL 1600831, at *2 (W.D.N.Y. April 23, 2021) ("Plaintiffs cite a variety
of studies showing that the virus spreads through human respiration. An infected person may
exhale droplets which travel through the air before settling on surfaces. The virus may remain
viable for as long as four days"); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 20 Civ. 4612, 2020
WL 7321405, at *2 (S.D.N.Y. Dec. 11, 2020) (noting that COVID can spread via "asymptomatic
transmission," and that, since the virus "can live on contaminated objects or surfaces,"
individuals "could contract COVID-19 through contact with such surfaces").

because coverage was not triggered in the first place. 751 N.Y.S.2d at 10. Put simply, Mario

Badescu cannot escape *Roundabout*; it is exactly on point and is controlling.

Straying even further from New York law, Mario Badescu argues in passing that courts

in London and France have upheld coverage in similar circumstances. (Opp. 13.) This case does

not arise under foreign law, but, regardless, the insuring language in those cases was completely

different. The UK decision analyzed four different types of insuring clauses—such as one

covering "business interruption loss caused by occurrence of a notifiable disease"—none of

which referred to "direct physical loss" or "direct physical damage." *See Fin. Conduct Auth. v.

Arch Ins. (UK) Ltd*, [2021] UKSC 1, 2021 WL 00135827 (Jan. 15, 2021).  The French decision

(provided to the Court only in the form of an extremely rough translation by a consulting firm)

addressed a clause providing coverage when an "administrative closure" causes business

interruption—again, without reference to the words at issue here.[3]

## II.    A HANDFUL OF OUTLIER CASES DO NOT CREATE AMBIGUITY

Mario Badescu is wrong to suggest that a handful of outlier cases in other jurisdictions

means that the language here is ambiguous. (Opp. 9-10.)

First, "whether the contract is ambiguous is a question of law for the court," *Law

Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010), and so this

Court must decide the issue for itself. Merely searching the hundreds of cases for some

indication of diverging views does not show that a contract or insurance policy is ambiguous.

*See*, *e.g.*, *Chief of Staff LLC v. Hiscox Ins. Co.*, No. 20 C 3169, 2021 WL 1208969, at *4 (N.D.

Ill. Mar. 31, 2021) (COVID-19 insurance case observing that "disagreement among courts  . . .

---

[3] *See* https://www.aaimco.com/wp-content/uploads/ AXA-France-Decision-OS 222020.pdf
(citation provided by Mario Badescu); https://www.wilsonelser.com/writable/files/Microsites/
Coronavirus2020/International_News_Files/covid19_maison_rostang_axafrance-
analysis_200529.pdf (law firm memo providing English language summary).

does not, by itself, render the provision ambiguous"). If a "division of judicial authority automatically" indicated ambiguity then one unreasonable decision would effectively become "binding on all other courts"—which is not the law. *Accord Moskal v. Unites States*, 498 U.S. 103, 108 (1990) (holding that differing judicial readings of criminal statutes does not automatically make the statute ambiguous so as to trigger the "rule of lenity").

Second, *all* of the New York courts, and virtually all of the courts elsewhere, have concluded that COVID-19 business interruption unambiguously does not amount to "direct physical loss" or "direct physical damage." That a few courts found otherwise is not reason to view unambiguous language as ambiguous, or to conclude that so many courts have all erred. The court in *Graspa Consulting, Inc. v. United National Insurance Company*, No. 20-23245, 2021 WL 1540907 (S.D. Fla. April 16, 2021), refused to find ambiguity based on a "handful of contrary cases" that have allowed COVID-19 cases to proceed, because the Florida cases were unanimous in finding no coverage and were consistent with the "overwhelming majority view" elsewhere. *Id*. at *8. The same is true here for the New York decisions.

Finally, the Court should be especially wary of finding ambiguity based on a few out-of-state cases when, as discussed above, the primary rationale of those cases is the "loss of use" theory that the binding *Roundabout* decision rejected.

## III.   SENTINEL'S INTERPRETATION DOES NOT CONFLATE "LOSS" AND "DAMAGE"

Mario Badescu argues that "loss of use" must be covered to avoid rendering "'physical loss of' surplusage (Opp. 17.)  But the First Department in *Roundabout* rejected this same argument because "loss of" encompasses "theft or misplacement," as contrasted with "damage."

751 N.Y.S.2d at 8. In addition, "loss of" could also encompass complete destruction of property, "whereas 'damage' contemplates a lesser injury." *Michael Cetta*, 2020 WL 7321405, at *9.[4]

Further supporting the point are cases that have found the phrase "direct physical loss" to be triggered in instances where property goes missing, irrespective of whether it can be shown that the missing property was also damaged. For example, in *Rokeach v. Hanover Insurance Co*., No. 1:13-cv-5011-GHW, 2015 WL 2400097, at *3 (S.D.N.Y. May 19, 2015), the policy covered "direct physical loss of or damage to Covered Property at the premises," and the court allowed a welding business to proceed past summary judgment on a claim arising from a series of property thefts. *Id*. at *4. *See also*, *e.g.*, *MGN Logistics, Inc. v. Travelers Property Cas. Co.*, No. 16 CV 4301, 2017 WL 3780280, at *4 (N.D. Ill. Aug. 31, 2017) (allowing coverage under a policy insuring against "direct physical loss" when copper coils went missing in transit).

## IV.    COVERAGE REQUIRES DAMAGE THAT IS "PHYSICAL"

Mario Badescu tries to delete the requirement of "physical" damage by arguing that the adjective "physical" might only modify the word "loss" in the phrase "physical loss of or damage to." (Opp. 14.) According to Mario Badescu, the policy language does "not require a physical cause," in much the same way that that adjective "green" in the phrase "I like green tea or hats" might be read to only modify the first noun, "tea" (*i.e.*, the speaker may like hats of all colors).  (*Id*.) The Court need not delve into this grammatical analysis, however, because Mario

---

[4] *See also*, *e.g.*, *Deer Mountain*, 2021 WL 2076218, at *9 ("[I]nterpreting 'loss of' to exclude 'loss of use' does not render any word in the phrase 'direct physical loss of or damage to property' superfluous."); *Food for Thought Caterers Corp. v. Sentinel Ins. Co*., No. 20-cv-3418, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) (citing *Roundabout* to reject the argument that Sentinel's "interpretation fail[s] to give the phrase 'loss of' a distinct meaning from 'physical damage'"); *deMoura v. Cont'l Cas. Co.*, 20 Civ. 2912, 2021 WL 848840, at *6 (E.D.N.Y. Mar. 5, 2021) (explaining that "the phrase 'physical loss of or damage to property' in this context plainly covers two scenarios: one where 'physical loss' occurs—which naturally refers to a situation where the value of the property as a whole 'disappear[s] or 'dimin[ishes]'—and one where 'damage' occurs—that is, where the property is harmed but not destroyed'").

Badescu has simply misquoted the policy language, which requires "physical loss or **physical damage** to" property:

> **A. COVERAGE**
>
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

(ECF 40-3 (the "Policy") at pg. 30 of 159 (§ A).)

> **o. Business Income**
>
> **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(*Id*. at pg. 39 of 159 (§ A.5.o).)

> **p. Extra Expense**
>
> **(1)** We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(*Id*.) There is simply no avoiding the requirement that the property damage be "physical."

**V.   THE DIFFERENCE BETWEEN LOSS "TO" AND LOSS "OF" PROPERTY DOES NOT HELP MARIO BADESCU**

Mario Badescu is incorrect to place "significan[ce]" on the fact that the policy in this case refers to loss "of" property, as instead of (in some other cases) loss "to" property. (Opp. 17.) To

begin, the policy in *Roundabout* covered losses "of" property, just as in this case. Specifically, the insurance company agreed to cover interruption in the production of the theater's shows that was the result of "***loss of***, damage to or destruction of property" at the theater. 751 N.Y.S.2d at 5 (emphasis added).  The phrase "loss of" appears *twelve times* in the opinion, including, critically, in the First Department's rejection of the argument "that the phrase 'loss of' must include 'loss of use of.'" *Id.* at 8. Even setting aside *Roundabout*, as one federal court in California explained, the "reliance on the difference between prepositions—'of' versus 'to'"—does not help because, on either phrasing, the concept of "direct physical loss" cannot possibly encompass "anything that interferes with the permitted physical activities on a property." *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1231-32 (C.D. Cal. 2020). New York courts have not once found the "of" phrasing to prevent dismissal of similar cases.[5]

## VI.  MARIO BADESCU CANNOT INFER COVERAGE FROM THE LACK OF AN EXCLUSION

Sentinel's moving papers detailed why, under New York law, the lack of a virus exclusion is irrelevant to the scope of coverage, citing to authority from both the Second Circuit and the New York Court of Appeals. (Sent. Br. 18-20 (citing *Comm'l Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26 (2d Cir. 1999) and *Raymond Corp. v. Nat'l Union Fire Ins. Co.*, 833 N.E.2d 232 (N.Y. 2004), among other cases).) Mario Badescu does not attempt to dispute or distinguish these cases, and even states that Sentinel is "is correct that a lack of a virus exclusion does not per se create coverage." (Opp. 23.) But at the same time Mario Badescu

---

[5] *Buffalo Xerographix*, 2021 WL 2471315, at * 1; *Deer Mountain*, 2021 WL 2076218, at *2; *Jeffrey M. Dressel, D.D.S., v. Hartford Ins. Co. of the Midwest, Inc.,* No. 20-CV-2777, 2021 WL 1091711, at *1 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey DDS v. Hartford Fin. Servs. Grp. Inc.*, No. 20-cv-03350, 2020 WL 1034259, at *1 (S.D.N.Y. March 18, 2021); *Food for Thought*, 2021 WL 860345, at *1; *deMoura*, 2021 WL 848840, at *2; *10012 Holdings, Inc. v. Hartford Fire Ins. Co.*, 20 Civ. 4471, 2020 WL 7360252, at *1 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta,* 2020 WL 7321405, at *1 (all dismissing cases brought under policies with "loss of" property language).

backtracks to argue that the lack of a virus exclusion should "give this Court serious pause in dismissing." (*Id.*)

In fact, the Court should not hesitate to dismiss because the rule in New York is crystal clear: exclusions may only "subtract from coverage" and "cannot create coverage" by "negative inferences." *Raymond Corp*, 833 N.E.2d at 235. Mario Badescu is urging the Court to make exactly the sort of negative inference that is not permitted under New York law and that courts across the country have consistently refused to do in similar COVID-19 cases. (Sent. Br. 19-20 (collecting cases).) *See also Buffalo Xerographix*, 2021 WL 2471315, at * 4 (concluding that exclusions only "limit rather than expand coverage" and that the "omission of the Virus Exclusion . . .  from Plaintiffs' policies is irrelevant").

## VII. MARIO BADESCU CANNOT RESCUE ITS COMPLAINT WITH EXPERT REPORTS THAT ARE OUTSIDE THE PLEADINGS AND THAT IN ALL EVENTS FAIL TO SHOW ANY "DIRECT PHYSICAL LOSS" OR "DIRECT PHYSICAL DAMAGE"

Mario Badescu's reliance on its expert reports should be rejected for two reasons.

First, on a motion to dismiss, the Court may only consider a document outside the complaint if the document was "attached to the complaint or incorporated in it by reference" or if the document is one "upon which the complaint solely relies and which is integral to the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (alteration and emphasis removed). The Amended Complaint does not refer to either expert or to their reports, nor does it attach the reports. (*See* ECF 28.)  It would have been impossible for the Amended Complaint to have cited the expert reports, because they are dated one month after the Amended Complaint was filed. (*Compare id.* (Amended Complaint, dated April 8, 2021) *with* ECF 40-1, 40-2 (reports dated May 5 and 6, 2021).) *Pilchman v. Am. Federation of State, County & Municipal Employees, AFL-CIO*, No. 10 CV 4976, 2011 WL 4526455, at *4 (S.D.N.Y. Sept.  29, 2011)

(refusing to consider "emails that post-date the Second Amended Complaint" because they "could not have been relied upon at the time the Complaint was drafted").

Mario Badescu argues that "in drafting of the Complaint, [it] relied on various experts' conclusions" (Opp. 9), but the governing standard for considering an external document is not whether a party asserts, after the fact, that a document or other information somehow influenced the drafting. If what Mario Badescu proposes were the rule, "there would be no limit on the number and type of documents that could be thrown at a court in support of or in opposition to a motion to dismiss." *Khanukayev v. Times Square Alliance*, No. 08 Civ. 6832, 2010 WL 2836818, at *1 (S.D.N.Y. July 7, 2010) (refusing to consider material offered by plaintiff that was outside the complaint). Courts commonly refuse to consider expert material outside the pleadings on a motion to dismiss, and this Court should do the same. *Pyatt v. Raymond*, 462 F. App'x 22, 24 (2d Cir. 2012) (upholding District Court's refusal to consider expert reports that "were not attached to or integrated into the complaint, or incorporated therein") *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 283 n.20 (S.D.N.Y. 2011) (refusing to consider expert report that "was not attached to, referred to, nor integral to the Amended Complaint").

Second, even if the reports are considered, they do not solve the problem for Mario Badescu because neither report identifies any particular item of property that was tangibly damaged, nor say how any physical damage occurred.

The report of Dr. Michael Sulzinski contains a heading "Physical Loss or Damage at Mario Badescu Skin Care, Inc.," but the first sentence under the heading merely assumes the conclusion: "The SARS-CoV-2 virus **causes physical loss or damage** to schools and college campuses, restaurants, banks, hotels, shopping malls, supermarkets, including any building in which persons enter, including, the premises in and around Mario Badescu Skin Care, Inc." (ECF

40-1, at 9 (emphasis added).)  What follows from there is not any account of how the virus damages any physical property, but, instead, a description of the *operational* changes Mario Badescu was forced to make to adapt to the pandemic, such as:

- using "single use towels, smocks, and other linens";

- providing services only in "rooms with openable windows"; and

- eliminating "body massage, waxing, electrolysis and threading services," as well as "oxygen facials"

(*Id*. at 10-11.)  This analysis amounts to an assertion that an impairment of the ability to *use* the premises triggers coverage—in other words, the very "loss of use" argument that is not recognized under New York law.  If there were any doubt that Dr. Sulzinski is advancing a "loss of use" theory, his rebuttal report argues explicitly that the COVID-19 pandemic "rendered the space substantially unusable." (Michael Reply Decl. Ex. D, at 9.)

In addition, Dr. Sulzinski's rebuttal report concedes "that common household disinfectants will eliminate the virus" (*id*. at 3), when, under New York law, "'an item or structure that merely needs to be cleaned has not suffered' a direct physical loss." *Food for Thought*, 2021 WL 860345, at *5 (citation omitted).

The report also concedes that when the virus is present on physical property, it will "lose infectivity over time," that that it is only when new people enter a premises that the "contamination risk resumes." (*Id*. at 8.) This fleeting existence only reinforces the lack of property loss or damage. After all, viral particles "do not alter the characteristics of the covered property in any way except that their presence creates a health risk for humans who enter the premises." *Kim-Chee*, 2021 WL 1600831, at *4. Thus, even assuming the virus is present at a premises, the "building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection." *Id*.

-12-

Mario Badescu's second report, from math professor Dr. Aleksandr Aravkin, is irrelevant, because it merely opines, based on a statistical analysis, that it was likely that approximately five infected people entered Mario Badescu's premises.  (ECF 40-2, at 6.) Dr. Aravkin does not offer any views on "direct physical loss" or "direct physical damage," and, in fact, the words "loss" and "damage" do not appear in his report.

Further, Dr. Aravkin also does not draw any causal connection between the five hypothetical, infected people, and the losses Mario Badescu suffered to its business.  As detailed in Sentinel's moving brief, Mario Badescu would have been faced with the same operational restrictions, and subject to the same governmental mandates, regardless of how many sick people entered—whether that number had been five, or one thousand, or even zero.  (*See* Sent. Br. 15-16.) Accordingly, "post hoc discovery" about whether or to what extent the virus was present would make no difference, as it "would not change the cause of the Plaintiff's income losses." *Whiskey Flats, Inc. v. Axis Ins. Co*., No. 20-3451, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021). The expert report of Dr. Aravkin is exactly the sort of meaningless "post hoc" discovery that cannot change the fact that Mario Badescu has not plausibly alleged facts connecting its business losses to any direct physical loss or direct physical damage to property at its premises.

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should dismiss Mario Badescu's Amended Complaint in its entirety with prejudice.

Dated: June 21, 2021                    Respectfully submitted,

                                        STEPTOE & JOHNSON LLP

                                        By:   /s/ Charles Michael
Sarah D. Gordon*                              Charles Michael
1330 Connecticut Avenue, NW                   Meghan Newcomer
Washington, D.C. 20036                        1114 Avenue of the Americas
(202) 429-3000                                New York, New York 10036
sgordon@steptoe.com                           (212) 506-3900
*pro hac vice application forthcoming         cmichael@steptoe.com
                                              mnewcomer@steptoe.com

          *Counsel for defendant Sentinel Insurance Company, Ltd.*

                                    -14-