USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/27/2022_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIO BADESCU SKIN CARE INC.,

                Plaintiff,

-against-

SENTINEL INSURANCE CO.,

                Defendant.

20 Civ. 6699 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

    Plaintiff, Mario Badescu Skin Care Inc., brings this action for breach of contract against Defendant Sentinel Insurance Company ("Sentinel"), alleging that Sentinel failed to compensate Plaintiff pursuant to an insurance policy (the "Policy") covering business interruptions and costs caused by the COVID-19 pandemic. Am. Compl. ¶ 1, ECF No. 28. Before the Court is Sentinel's motion to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Mot., ECF No. 33. For the reasons below, Sentinel's motion is GRANTED, and the amended complaint is DISMISSED with prejudice.

## BACKGROUND[1]

    Plaintiff, a New York-headquartered corporation, operates a Manhattan salon (the "premises") which provides personal care services, including facials, massages, and waxing. Am. Compl. ¶ 2. The nature of these services requires "close physical contact" between staff and customers, and surfaces and products within the salon are often used for multiple customers. Id. ¶¶ 3–5. Sentinel is an insurance company headquartered in Hartford, Connecticut. Id. ¶ 8.

---

[1] The following facts are taken from the amended complaint and assumed, for purposes of this motion, to be true. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

On July 27, 2019, Sentinel issued Plaintiff an insurance policy (the "Policy"), covering the premises through July 27, 2020. *Id.* ¶ 44. The Policy provides, in relevant part:

> **Business Income:** [Sentinel] will pay for the actual loss of Business Income [Plaintiff] sustain[s] due to the necessary suspension of operations during the period of restoration. The suspension must be caused by direct physical loss of or physical damage to property at the [] premises . . . caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 49 (quotation marks omitted). "Suspension" is defined as "[t]he partial slowdown or complete cessation of [Plaintiff's] business activities;" or "[t]hat part or all of the [] premises is rendered untentantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy." *Id.* The coverage period is defined as "the period of time that . . . [b]egins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the premises," and "[e]nds on the date when the property at the premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." *Id.* ¶ 52; Policy at 12, ECF No. 40-3.

The Policy also provides:

> **Extra Expense**: [Sentinel] will pay reasonable and necessary Extra Expense [Plaintiff] incurs during the period of restoration that you would not have incurred if there had been no direct physical loss or physical damage to property at the premises . . . caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 50. "Extra Expense" is defined as "expense incurred . . . [t]o avoid or minimize the suspension of business and to continue operations." *Id.*

The Policy also states:

> **Business Income from Dependent Properties**: [Sentinel] will pay the actual loss of Business Income [Plaintiff] sustains due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss.

2

> **Civil Authority:** This insurance is extended to apply to the actual loss of Business Income [Plaintiff] sustains when access to the [] premises is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [] the premises.

*Id.* ¶¶ 51–52 (quotation marks omitted). "Covered Cause of Loss" is defined as "risks of direct physical loss" subject to certain exclusions and limitations not applicable here. *Id.* ¶ 46. The Policy does not contain any "virus exclusions," even though Sentinel has issued other insurance policies to Plaintiff and other customers that do contain such exclusions. *Id.* ¶¶ 54–55.

Following the outbreak of the global COVID-19 pandemic, the Centers for Disease Control and Prevention ("CDC") issued guidelines recommending that individuals remain at home, practice cleaning and disinfection measures, and avoid activities that facilitated exposure to the virus. *Id.* ¶ 19. In March 2020, Governor Andrew Cuomo and Mayor Bill de Blasio each declared a state of emergency and issued a series of executive orders intended to curb the spread of the virus. *See id.* ¶ 42. On March 16, 2020, de Blasio issued an executive order requiring a 50% reduction in the in-person workforce of all city businesses, citing the "propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage." *Id.*[2] On March 18, 2020, Cuomo issued Executive Order No. 202.6, which required businesses throughout the state to reduce the number of in-person employees by 50%. *Id.* ¶ 31. On March 19, 2020, Cuomo issued Executive Order No. 202.7 which required Plaintiff, as a personal service salon in the state, to be "closed to members of the public." *Id.* ¶ 34. On March 20, 2020, Cuomo issued Executive Order No. 202.8 which required all businesses in the

---

[2] *See* City of New York, Emergency Executive Order No. 100 (Mar. 16, 2020), https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf. As the order was known to, and relied on by Plaintiff in drafting the Amended Complaint, the Court may consider it in deciding the present motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

state, with the exception of "essential businesses," to reduce their on-premises workforces by 100%. *Id.* ¶ 36. The three statewide orders remained in effect through at least June 2020, and as a result, Plaintiff alleges it was "prohibited . . . from resuming normal business operations." *Id.* ¶¶ 38, 40.

Plaintiff suspended operations at the premises on March 16, 2020, based on a "concern regarding the presence of the [v]irus," though they do not specify the source of this concern. *Id.* ¶ 29. On March 23, 2020, an employee informed Plaintiff that she had tested positive for the virus. *Id.* ¶ 27. That worker had last worked in the salon on March 16, 2020. *Id.* ¶ 28. Thereafter, at least seven other employees tested positive for COVID-19. *Id.* ¶ 30.

Plaintiff alleges it has suffered losses of at least $2,992,256.38 "[a]s a result of the [v]irus contaminating" the premises. *Id.* ¶ 58. On April 14, 2020, Plaintiff provided Sentinel with timely notice of the loss and sought coverage under the Policy. *Id.* ¶ 59. By letter dated April 22, 2020, Sentinel denied coverage, and has not issued any payments to date. *Id.* ¶¶ 60–61. Accordingly, on August 20, 2020, Plaintiff filed this suit for breach of contract. ECF No. 1.

## DISCUSSION

I. Legal Standard

A. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may

consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).[3]

B.  Applicable Law

The Court has diversity jurisdiction in this case pursuant to 28 U.S.C.§ 1332, because the parties are citizens of different states, Am. Compl. ¶¶ 7–8, and the amount in controversy exceeds $75,000, *id.* ¶ 9. The Court accordingly applies the choice-of-law rules of the forum state, which is New York. *See Md. Cas. Co. v. Continental Casualty Co.*, 332 F.3d 145, 151 (2d Cir. 2003). In contract disputes, New York requires courts to "apply the law of the place which has the most significant contacts with the matter in dispute." *Id.* Here, the disputed insurance contract applies to a New York entity, and the premises are located in New York. Am. Compl. ¶ 2. Accordingly, New York's laws govern. *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2014).

II.  Application

Under New York law, Plaintiff, as the policyholder, bears the burden of showing that the insurance contract covers the loss. *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (collecting cases). In interpreting a contract, courts must "give effect to the intent of the parties as expressed in the clear language of the contract." *Id.* at 275 (citation

---

[3] Plaintiff appends two expert reports to its opposition briefing, stating that the experts in question provided opinions that were relied upon in the drafting of the amended complaint, Pl. Mem. at 3, ECF No. 39, and that the Court should accordingly "deem[] as true" the facts contained therein, *id.* at 2. In deciding a motion to dismiss, although the Court may consider documents that Plaintiff "had either in [its] possession or had knowledge of and upon which [it] relied in bringing the suit," *Chambers*, 282 F.3d 147, here, both expert reports post-date the date of the amended complaint. *Compare* Am. Compl. (dated Apr. 8, 2021), *with* ECF Nos. 40-1, 40-2 (dated May 5 and 6, 2021). The experts in question were not named or referenced in the Amended Complaint, nor were the reports "attached to or integrated into the [amended] complaint, or incorporated therein." *Pyatt v. Raymond*, 462 F. App'x 22, 24 (2d Cir. 2012). Accordingly, the Court has no basis to conclude that Plaintiff "knew about and relied upon" these reports in drafting the amended complaint, and shall not consider them. The Court shall, however, consider the Policy, ECF No. 40-3, as Plaintiff substantially relies on the language of the Policy in drafting the amended complaint.

omitted). Where provisions are "unambiguous and understandable," courts must enforce them as written. *Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). Finally, courts should not "vary the contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v. Munich Reins. Am. Inc.*, 96 N.E.3d 209, 216 (N.Y. 2018) (citation omitted).

Under the Policy, Plaintiff seeks insurance coverage under the following provisions described above: (1) Business Income; (2) Extra Expense; (3) Business Income from Dependent Properties; and (4) Civil Authority Orders. The Court shall address each in turn.

### A. Business Income, Extra Expenses, and Business Income from Dependent Properties

Under the Business Income provision, Sentinel must pay for losses Plaintiff sustained due to a necessary slowdown or suspension of its operations "caused by direct physical loss of or physical damage to property." Am. Compl. ¶ 49. The Extra Expense provision requires Sentinel to pay for extra expenses incurred during a period of restoration following a "direct physical loss or physical damage to property." *Id.* ¶ 50. The Business Income from Dependent Properties provision similarly requires Sentinel to cover any losses Plaintiff incurs due to direct physical loss or physical damage at the premises of a dependent property. Am. Compl. ¶ 52. Sentinel moves to dismiss the amended complaint on the ground that Plaintiff has failed to sufficiently plead that its business was suspended, or that it incurred losses due to "direct physical loss of or direct physical damage to property," as required to trigger coverage under these three provisions. Def. Mem. at 7–8, ECF No. 34. The Court agrees.

Plaintiff first argues that the terms "physical loss of" or "damage to" are undefined in the policy, and are therefore ambiguous. Pl. Mem. at 14–15, ECF No. 39. But "the lack of a definition" alone does not render a word ambiguous. *Michael Cetta, Inc. v. Admiral Indemnity*

6

*Co.*, 506 F. Supp. 3d 168, 177 (S.D.N.Y. 2020) (citation omitted).  Numerous courts in this Circuit have interpreted identical provisions as they apply to COVID-19 claims, finding unanimously that the language at issue does not cover similarly-situated plaintiffs' losses because COVID-19-related business interruption does not amount to direct physical loss or direct physical damage.  *See Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co, Ltd.*, No. 20 Civ. 3350, 2021 WL 1034259, at *5–6 (S.D.N.Y. Mar. 18, 2021) (collecting cases).

Deriving the "plain and ordinary meaning" of identical contract language from the dictionary, courts in this Circuit have repeatedly concluded that the phrase "direct physical loss of or [physical] damage to . . . connotes a negative alteration in the tangible condition of property," that is, that this phrase "requires some form of actual, physical damage to the insured premises."  *Michael Cetta*, 506 F. Supp. 3d at 176 (citation omitted).  *See also Newman Myers*, 17 F. Supp. 3d at 331.  Therefore, "losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property, and cannot be classified as a form of direct physical loss or damage."  *Michael Cetta*, 506 F. Supp. 3d at 176.

Ignoring dozens of cases in this Circuit that have found otherwise, Plaintiff argues— relying solely on nonbinding, out-of-circuit opinions—that "loss of" should be construed to encompass "loss of use" because to find otherwise would result in "surplusage" with the term "damage."  Pl. Mem. at 14–16.  But, it is clearly established under New York law that "loss of" property does not encompass "loss of use" of that property.  *See Roundabout Theater Co. n. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. 2002).  In *Roundabout*, the Appellate Division, interpreting similar policy language, explicitly rejected the argument that "loss of" includes "loss of use" of the premises.  *Id.* at 7–8.  The *Roundabout* court concluded that coverage under such

7

provisions was "limited to losses involving physical damage to the insured's property." *Id.* at 8. Following *Roundabout*, "courts [applying New York law] have consistently concluded that insurance provisions with nearly identical language to the . . . provision[s] at issue in this case are triggered only where there is physical damage to covered property." *Sharde Harvey*, 2021 WL 1034259, at *7 (citing *Newman Myers*, 17 F. Supp. 3d at 331). Plaintiff neither persuasively distinguishes *Roundabout*, nor can it contest the unbroken line of precedent in the COVID-19 context that have interpreted identical provisions to find that physical damage to the premises is a prerequisite to coverage.[4]

Plaintiff next argues that it has "adequately alleged 'physical loss of or damage to'" the premises because of the "ubiquitous presence of the virus around and inside" the premises "rendering the space unusable." Pl. Mem. at 22; Am Compl. ¶ 6. Specifically, Plaintiff alleges that on March 16, 2020, it suspended operations at the premises due to a "concern regarding the presence of the virus," Am. Compl. ¶ 29, and that multiple employees who regularly worked at the premises subsequently tested positive for COVID-19, *id.* ¶¶ 27–30. Plaintiff contends that this is sufficient to demonstrate the presence of the virus within and around the premises. Pl. Mem. 18–22. Plaintiff further argues that New York caselaw does not require a "permanent physical alteration in order to meet a policy's 'physical loss of or damage to requirement,'" citing cases in which New York courts have recognized that "airborne, particulate-based harm" from smoke or other similar substances constitutes physical damage. *Id.* at 18–19.

---

[4] Plaintiff only attempts to distinguish *Roundabout* on the ground that the loss was excluded because the insurance policy there contained an exclusion for damage from the effects of an order of a civil authority, whereas here, the Policy "explicitly provides coverage for the acts of civil authority." Pl. Mem. at 21. But the *Roundabout* court made clear that it was "unnecessary. . . to rule on the applicability" of the civil authority exclusion because coverage was not triggered in the first place. 751 N.Y.S.2d at 10.

8

Even if the Court takes these facts as true and concludes that the COVID-19 virus was present "in the air or on the surfaces" of the premises, courts in this Circuit have been unanimous in concluding that "the presence of the COVID-19 virus . . . does not qualify as damage to the property itself," given the virus's short lifespan. *Kim-Chee LLC v. Philadelphia Indemnity Ins. Co.*, No. 20 Civ. 1136, 2021 WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021). Although in certain circumstances, New York courts have determined that the presence of airborne contaminants can constitute "physical damage" sufficient to trigger coverage, courts in those cases have premised such conclusions on findings that the presence of the contaminant damages the building itself to the extent that the building is rendered unusable on a long-term basis. *E.g.*, *id.* at *5 (collecting cases). But COVID-19 is harmful to people—not buildings. CDC guidance indicates the virus typically lasts on surfaces for around three days on common indoor surfaces, and that the virus's presence can be eliminated by routine cleaning and disinfection.[5] *See also* Am Compl. ¶ 28 (noting the virus remains on surfaces for "hours to days."). And, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20 Civ. 754, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) (citation omitted). Thus, even if the virus was physically present at the premises, its presence is short-lived and easily remediated, and thus "does not alter the covered property." *Kim-Chee*, 2021 WL 1600831, at *4. COVID-19 is, therefore, distinguishable from smoke, radiation, chemical dust and gas, asbestos and other contaminants "which may persist and damage the covered property" itself. *Id.*

---

[5] Ctrs. For Disease Control & Prevention, *Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments* (last updated Apr. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html.

Finally, Plaintiff argues that Sentinel could have, but failed to include a virus exclusion in the Policy, which demonstrates "it did not intend to exclude coverage for damages due to the presence of a virus." Pl. Mem. at 22. But New York law makes clear that exclusions may only "subtract from coverage" and "cannot create coverage" through negative inferences. *Raymond Corp. v. Nat'l Union Fire Ins. Co.*, 800 N.Y.S.2d 89, 92 (N.Y. 2004) (emphasis and citation omitted). As Plaintiff has failed to meet its initial burden of demonstrating that the Policy covers its losses, the lack of virus exclusion in the Policy is irrelevant to this dispute. *See Michael Cetta*, 506 F. Supp. 3d at 174, 185 n.5 (where plaintiff failed to plead that it met the requirements for coverage, the court did not reach the applicability of any exclusions).

### B. Civil Authority Clause

Plaintiff seeks coverage under the Civil Authority provision of the Policy, which provides that Sentinel must pay any loss of income Plaintiff incurred when "access to" the premises is "specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss [defined as 'risk of direct physical loss'] to property in the immediate area." Am. Compl. ¶¶ 46, 51.

Numerous courts in this Circuit have interpreted identical Civil Authority provisions to determine whether the New York City and state shutdown orders triggered coverage. Once again, these courts have unanimously concluded that the plaintiffs in each case were not entitled to coverage. *E.g.*, *Sharde Harvey*, 2021 WL 1034259, at *12–*15; *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 524 F. Supp. 3d 242, 249–51 (S.D.N.Y. 2021); *see also Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915–17 (N.Y. Sup. Ct. 2021). The Court adopts analogous reasoning here.

To trigger coverage under the Civil Authority clause, an insured must show, first, that an order from a civil authority specifically prohibited "access to" its premises; and second, that the civil authority order was the direct result of a risk of direct physical loss to property in the immediate area.  Am. Compl. ¶¶ 46, 51; *see also Sharde Harvey*, 2021 WL 1034259, at *12.  Here, Plaintiff has not plausibly pleaded either element. As to the first element, there is a distinction between limiting access to the premises, and prohibiting access altogether.  *E.g.*, *Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F. Supp. 2d 331, 336–38 (S.D.N.Y. 2004) (finding plaintiff was entitled to civil authority coverage only on dates where office access was completely denied by government order following September 11, 2001, but not for subsequent dates where access was only limited to certain persons).  Here, Plaintiff alleges only that the COVID-19 executive orders restricted "members of the public" from accessing the premises, and that as an employer, it was required to "reduce the in-person workforce" at the salon. Am. Compl. ¶¶ 34–36.  But nowhere does Plaintiff allege that access was completely denied to the premises—only that certain categories of persons (the general public and non-essential employees) were excluded.  *See Food for Thought*, 524 F. Supp. 3d at 250 (noting that "the owner of the property could continue to access the property despite the total reduction in the workforce.")

As to the second element, even assuming that Plaintiff has demonstrated that access to its premises was fully prohibited, Plaintiff has not plausibly alleged that the civil authority orders prohibiting access were related to risks of direct physical loss to property in the surrounding area. In interpreting materially similar civil authority coverage provisions, the New York Supreme Court has explained that "the gist of Civil Authority coverage is that physical harm to someone else's premises has caused the civil authorities to prohibit access to the insured's premises."

11

*Visconti*, 142 N.Y.S.3d at 917.  But here, Plaintiff alleges that the orders were "predicated, in part, on the effect of the presence of [COVID-19] within enclosed, highly trafficked locations." Am. Compl. ¶ 41.  That is, Plaintiff "was forced to close for the same reason as its neighbors – the risk of harm to individuals on its own premises due to the [COVID-19] pandemic." *10012 Holdings, Inc. v. Sentinel Ins. Co. Ltd.*, 507 F. Supp. 3d 482, 488 (S.D.N.Y. 2020).  Access to the premises was limited "for the same reason" as every other business in New York—"to limit the risk of spreading the Covid-19 virus.  This simply does not implicate Civil Authority coverage." *Visconti*, 142 N.Y.S.3d at 917.

To prove this element, Plaintiff relies on a civil order issued by the mayor of the New York City, which required reductions in in-person workforces at local businesses on the basis that "the virus physically is causing property loss and damage."  Am. Compl. ¶ 42.  Plaintiff argues that "[p]leading this alone should be sufficient to survive a motion to dismiss."  Pl. Mem. at 23–24.  But Plaintiff cites no authority supporting the proposition that "the statement of a municipal executive branch officer can alter the meaning of preexisting contract terms or overrule the decision of the state's appellate courts."  *Sharde Harvey*, 2021 WL 1034259, at *10. Moreover, a generalized allegation that the "virus physically is causing loss and damage" does not establish that the premises—or surrounding businesses—suffered "physical loss of, or physical damage" that would trigger application of the clause. *See Food for Thought*, 524 F.Supp.3d at 248–49.

Accordingly, Plaintiff is not entitled to coverage under the Civil Authority provisions of the contract.

## CONCLUSION

For the foregoing reasons, Sentinel's motion to dismiss the amended complaint is GRANTED. Plaintiff has already amended its complaint once. For the reasons stated above, the Court finds that further attempts to amend the complaint would be futile. Accordingly, the amended complaint is DISMISSED with prejudice. The Clerk of Court is directed to terminate all pending motions, vacate all conferences, and close the case.

SO ORDERED.

Dated: January 27, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge